PREVIOUSLY FILED WITH CSO AND
CLEARED FOR PUBLIC FILING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABDUL RAHEEM GHULAM RABBANI, *et al.,* ) | |
| ) | |
| *Petitioners,* ) | |
| ) | |
| *v.* ) | Civil Action No. 05-01607-RMU |
| ) | |
| GEORGE W. BUSH, *et al.,* ) | |
| ) | |
| *Respondents.* ) | |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS AND REPLY TO RESPONDENTS' OPPOSITION TO MOTION FOR WRIT OF *HABEAS CORPUS* OR ORDER TO SHOW CAUSE

### I.    INTRODUCTION AND BACKGROUND

Petitioners Abdul Raheem Ghulam Rabbani and Ahmmed Ghulam Rabbani have been imprisoned by the United States at the United States Naval Air Station in Guantanamo Bay for approximately three years. They have been held virtually *incommunicado* and in violation of United States and international law.

On August 11, 2005, Petitioners, together with Next Friends Malika and Fouzia Ahmmed as co-Petitioners, filed their petitions for *habeas corpus* relief. On September 23, 2005, Petitioners also filed Petitioners' Motion for the Immediate Issuance of a Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2243 or, Alternatively, to Issue an Order to Show Cause and For an Order that Respondents Furnish Petitioners with Applicable Factual Returns.

Respondents have now moved to stay these proceedings, pending resolution of "all appeals" from rulings in *Khalid v. Bush, Boumediene v. Bush,* Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed,* Nos. 05-5062, 05-5063 (D.C.

Cir. Mar. 2, 2005), and in *In re Guantanamo Bay Detainee Cases*, No. 02-cv-0299, *et al.*,

(D.D.C. 2005).

## II. PLAINTIFFS DO NOT OPPOSE A CONDITIONAL STAY SIMILAR TO THAT ENTERED BY THIS COURT IN *AL-SUBAIY V. BUSH*

Petitioners' counsel recognizes that this is not a case of first impression. Therefore, in an

effort to conserve the parties' and the Court's resources, Petitioners' counsel indicated to

Respondents that Petitioners would not oppose the entry of a conditional stay order similar to

that already entered by this Court in *Al-Subaiy v. Bush,* C.A. No. 05-1453-RMU, Dkt. 14

(D.D.C. Sept. 19, 2005). *See also Hatim v. Bush*, C.A. No. 05-1429-RMU (D.D.C. Aug. 22,

2005), *Zalita v. Bush*, C.A. No. 05-1220-RMU (D.D.C. Sept. 29, 2005), *Al-Hela v. Bush*, C.A.

No. 05-1048-RMU (D.D.C. June 3, 2005), *Tumani v. Bush*, C.A. No. 05-0525-RMU (D.D.C.

Apr. 6, 2005), *Qayed v. Bush*, C.A. No. 05-0454-RMU (Apr. 6, 2005), and *Al-Oshan v. Bush*,

C.A. No. 05-0520-RMU (D.D.C. Mar. 31, 2005). Petitioners believe an order similar to that

entered in *Al-Subaiy v. Bush* balances the interests of the parties. It stays the case pending

resolution of the relevant appeals while simultaneously enabling Petitioners' counsel to focus

their investigation and preparation of Petitioners' cases (by requiring Respondents to furnish

factual returns), protecting Petitioners from removal to foreign territories for torture or indefinite

detention without due process of law (by requiring Respondents to provide counsel for the

Petitioners and the Court with 30-days notice of any intent to transfer Petitioners) and allowing

Petitioners to seek emergency relief if necessary.

Respondents, however, opposed Petitioners' request and have moved for an

unconditional stay.

## III.   ARGUMENT

### A.   The Motion to Stay Should Be Denied.

#### 1.   Any Unnecessary Delay in Resolution of Petitioners Abdul Raheem Ghulam Rabbani and Ahmmed Ghulam Rabbani is Unwarranted.

On information and belief, Petitioners have been held for nearly three years, without legal justification. Tellingly, the government gives no estimate of how much longer their detention would last should the stay be entered. Indeed, there is no way to predict how much longer Petitioners would have to wait before rulings of the Court of Appeals, or if the Supreme Court will grant certiorari on the applications of the losing parties and decide the legal issues definitively. In short, the stay would most likely add years to these men's unlawful and unreviewed detention. Meanwhile, individuals unlawfully held could be languishing in a prison under abusive or inhumane conditions, unable to see their wives or their young children, and unable to make any progress toward the resolution of their *habeas* petitions.

Although the appellate process in the related cases may clarify some matters relevant to the petition at issue, there is no reason to enter the broad stay requested by the Government. Even if the Court were disinclined to rule on a motion to dismiss filed by the Government in this case, and instead would opt to await appellate rulings, discovery could be proceeding and the case could be brought closer to an ultimate determination of Petitioners' claims as time is undeniably of the essence.

As the Government concedes, the denial of a stay will not burden the Government except in ways incidental to the normal processes of litigation. However, as the Court of Appeals observed in *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1135-36 (D.C. Cir. 2004), this bears little consideration since every defendant would prefer to avoid the burdens of litigation and have his legal position validated by an appellate court. The interest, if there is

one, in avoiding a determination of legal issues that are before a higher court in another case can

easily be satisfied without bringing all proceedings in this case to a halt.

### 2.    A Stay Would Offend Governing Rights to a Speedy Trial.

Congress has, in plain terms, prohibited vague and unlimited detentions such as the

detention Petitioners have suffered and will continue to suffer indefinitely should this Court issue

a stay of these proceedings. *Habeas corpus* petitions are to be promptly addressed. *See Braden*

*v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 490 (1973) (the writ of *habeas corpus* is "a

'swift and imperative remedy in all cases of illegal restraint or confinement.'"(citing *Secretary of*

*State for Home Affairs v. O'Brien*, (1923) A.C. 603, 609 (H.L.)). The timeline set forth in 28

U.S.C. § 2243 contemplates that Respondents will make a return "within three days," or if good

cause is shown, not exceeding twenty days.[1] Even lawful detention must be abbreviated, and

speedy-trial laws require military and other courts to hold speedy trials. *See* 10 U.S.C. § 833

(accused in court martial proceedings should be given notice of charges within eight days of

confinement). Similarly, Article 103 of the Third Geneva Convention sets out a ninety-day limit

to unreviewed detentions. Granting the Government's stay would contradict these plain

expressions of Congressional intent and binding international law.

The need for a prompt hearing is greatest when the executive has afforded a petitioner no

judicial review. *See Rasul v. Bush*, 124 S. Ct. 2686, 2692 (2004); *INS v. Enrico St. Cyr,* 533 U.S.

289, 301 (2001). The deference accorded by the judicial to the executive branch in the exercise

of the latter's war powers should not delay these proceedings. The Supreme Court has ruled that

petitioners are entitled to at least minimal due process, and specifically considered and rejected

---

[1]    The *habeas corpus* rules relax these return periods in cases involving prior
judicial involvement, but provide no such express relaxation in cases of unreviewed detentions
by the Executive Branch, leaving that question to discretion of this Court.

the proposition that judicial review will intrude upon the powers delegated to the executive under Article II of the Constitution of the United States. *Rasul*, 124 S. Ct. at 2692-93.

### 3.    The Government Has Not Met The Burden Faced By Its Motion.

The Government makes no attempt to meet its burden under the governing standards for obtaining a stay of Mr. Abdul Raheem Ghulam Rabbani and Mr. Ahmmed Ghulam Rabbani's petitions. As this Court has explained, however, "a moving party must satisfy stringent standards required for a stay pending appeal." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 14 (D.D.C. 2002) (citations and quotations omitted). The Court of Appeals has set forth the following test:

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? . . . (4) Where lies the public interest?

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

The Government has not met its burden of establishing its entitlement to a stay – and this failure should be dispositive: it makes no showing of its likelihood to prevail on the merits of its appeal in the related cases; it has not even posited a reason why it would be irreparably injured if the stay is not entered; it is unquestionable (though the Government pays it no mind) that Petitioners could be irremediably harmed by the stay; and the public interest does not favor postponing proceedings on the petition indefinitely.

#### a.     No Strong Showing of a Likelihood of Prevailing on Appeal Has Been Made.

The Government has failed to make a strong showing of its likelihood of prevailing on

the appeals in *Khalid, Boumediene,* Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp.

2d 311 (D.D.C. 2005), *appeals docketed,* Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and in

*In re Guantanamo Bay Detainee Cases,* No. 02-cv-0299, *et al.*, (D.D.C. 2005).  It is not

Petitioners' obligation to disprove this likelihood.  However, Petitioners observe that the

Government's position in its appeal of Judge Green's order contradicts the command of the

majority in *Rasul,* that the district courts have jurisdiction to "*hear* petitioners' habeas corpus

challenges." 124 S. Ct. at 2698 (emphasis added).

Indeed, the Court concluded its opinion by ordering just the sort of proceedings that the

Government is now trying to stop:

> Whether and what further proceedings may become necessary *after respondents make their response to the merits of petitioners' claims* are matters that we need not address now.  What is presently at stake is only whether the federal courts have the jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing. Answering that question in the affirmative, we reverse the judgment of the Court of Appeals and remand *for the District Court to consider in the first instance the **merits** of petitioners' claims.*

*Id.* at 2699 (emphasis added).

#### b.     Irreparable Injury Has Not Been Shown.

The Government has not shown that it will be irreparably injured if this Court proceeds

on Mr. Abdul Raheem Ghulam Rabbani and Mr. Ahmmed Ghulam Rabbani's petitions – it has

not even tried.  What it argues would happen without the stay, falls far short of irreparable injury.

At most, the Government argues that proceeding would impose some needless litigation costs.

Particularly when concern over such costs is balanced by the concern that a man is being

unlawfully detained, possibly inhumanely, without being charged and without regular access to a lawyer, this argument is woefully inadequate.

Moreover, the proceeding will not impose an unreasonable burden on the Government. The Court has broad authority to structure the form of a *habeas* hearing, see 28 U.S.C. § 2243, and can do so in a way that takes account of the Government's legitimate national security concerns. If the Government believes that the proceedings of any given Combatant Status Review Tribunal were adequate and compelling, then the Court can devise a procedure to permit the Government to offer evidence concerning those proceedings and at the same time protect the rights of Petitioners to contest the evidence and the adequacy of those proceedings.

Proceedings cannot and will not impose irreparable harm on the Government and need not even pose any unreasonable burdens. This Court has broad authority to structure the form of a *habeas* hearing, *see* 28 U.S.C. § 2243, and can do so in a way that takes account of the Government's legitimate national security concerns.

  c.  **Issuance of a Stay Will Irreparably Harm Petitioners.**

Although the Government fails to acknowledge this, the long delay occasioned by the proposed stay could harm Petitioners substantially and irreparably. Of course, if Petitioners are not being unlawfully detained or inhumanely treated, then further detention may not impose any harm. But if they are (and this is what the petition alleges), then every moment they are detained, their liberty compromised, and their access to the Court denied, and every moment they are deprived of the companionship of their wives and children, the magnitude of the harm grows and is, moreover, irreparable.

Regrettably, these harms could be compounded by Petitioners' treatment at the detention facility. Counsel who have visited Guantanamo, as well as a number of press accounts, have reported disturbing allegations of abuse, including instances of withholding of medical treatment,

sexual humiliation, sleep deprivation, prolonged shackling, forced enemas, exposure to temperature extremes and noxious noise, light isolation, banning of reading materials, and lack of exercise. Pets.' Mot. to Issue an Order to Show Cause ("Mot. to Show Cause") (Dkt. 6) at 6, 7. It is these conditions that detainees are protesting as they continue a hunger strike that has caused many to require medical attention. *Id.* at 7, 12.

### d.    The Public Interest Favors Proceeding on the Petition.

Respondents do not identify any public interest, besides the prevention of litigation costs, served by issuance of the stay. A stay will not serve the public interest by prolonging the confinement of enemy combatants, since the claim of the *habeas* petitions is that Petitioners have done nothing warranting that designation.

Indeed, such a stay would harm, rather than serve the public interest. It is hardly necessary to stress the public interest embodied in the right to petition for *habeas corpus*. Moreover, the public interest is also served by insuring that the government is abiding by ordinary standards of decency in confinement.

### 4.    Even if a Stay is entered, Respondents Should Be Required to Submit Factual Returns

Any stay should not excuse Respondents from promptly providing Petitioners' factual returns to counsel. In *Al-Subaiy, Hatim, Zalita, Al-Hela, Qayed*, and *Tumani*, this Court ordered Respondents to provide factual returns, even though the Court also stayed those cases. At least six other Judges of this Court, although staying detainee cases, have ordered Respondents to provide factual returns.[2]

---

[2]      Order, *Al-Wazan v. Bush*, C.A. No. 05-0329 (PLF), June 14, 2005, Order, *Battayav v. Bush*, C.A. No. 05-714 (RBW) (D.D.C. May 18, 2005), Mem. Order, *Al-Mohammed v. Bush*, C.A. No. 05-00247 (HHK) (D.D.C. Apr. 30, 2005), Order, *Al Joudi v. Bush*, C.A. No. 05-301 (GK) (D.D.C. Apr. 29, 2005), Order, *Ameziane v. Bush*, 05-0392 (ESH) (D.D.C. Apr. 12,

Those returns have been critical. They have enabled counsel to interview their clients, their clients' families and others on a focused and informed basis, and otherwise to investigate and prepare their clients' cases – and to do so while memories are still fresh, witnesses and documents still available, and other evidence still within reach. As this Court stated in *Al-Subaiy*, "petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients." *Al-Subaiy*, Mem. Order (Sept. 19, 2005) at 3, *Hatim*, Mem. Order (Aug. 22, 2005) at 3, *Al-Hela*, Mem. Order (June 9, 2005) at 2, *Qayed*, Order (Apr. 19, 2005) at 2, and *Tumani*, Order (Apr. 19, 2005) at 2. For these reasons, the Court should not stay Respondents' obligation to provide the returns in this case.

The release of factual returns had dramatic results in the case of five Chinese Uighur detainees, who, it was discovered, had been cleared months ago by the military tribunal. Robin Wright, *Chinese Detainees are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go*, Wash. Post, Aug. 24, 2005, at A01. Their lawyers were able to press for their release and better living conditions. The Uighurs are now being held in less restrictive conditions in Guantanamo until their safe release to a neutral nation can be secured. Josh White, *5 Chinese Detainees Given More Freedom at Guantanamo*, Wash. Post, Aug. 26, 2005, at A22.

a.    **Respondents' Arguments Against Providing Returns In This Case Fall Short.**

Respondents also complain that providing Petitioners' returns would confront them with "an immense logistical burden." (Mot. to Stay at 13.) Any such "burden" to Respondents, however, does not outweigh Petitioners' interest in ensuring the investigation and preparation of

---

2005), Order, *Abdullah v. Bush*, C.A. No. 05-23 (RWR) (D.D.C. Apr. 8, 2005). Mot. to Show Cause at 7, 8.

their cases before the trail – cool as it might be now – becomes completely cold, and in being able to proceed without delay if the Court of Appeals allows these cases to proceed.

Respondents' asserted "burden," moreover, is vastly overblown. The factual return is simply the record of proceedings before the Combatant Status Review Tribunal. *See id.* at 11 n.10. It already exists. Classification decisions regarding the information in the record of those proceedings were made *before* the proceedings began, and the entirety of the proceedings underwent legal review upon their completion. *See, e.g.*, Mem. from Bree A. Ermintrout, to Director, Combatant Status Review Tribunal, Jan. 18, 2005, *in* Factual Return for Petitioner Abdulsalam Ali Abdulrahman Al-Hela, *Al-Hela v. Bush*, 05-CV-01048 (RMU) (D.D.C. June 15, 2005) (attached to the Declaration of Reena Gambhir as Exhibit A). The only "burden" facing Respondents now is photocopying, sorting and stapling. Respondents were able to produce the classified versions of approximately 60 returns in little more than a week when Judge Green ordered them to do so in the cases under her supervision.

Respondents claim that the returns would be useless to Petitioners' counsel because counsel could not share with Petitioners the classified information in the returns. (Mot. to Stay at 13.) But not all the information in the returns is classified. The allegations against Petitioners, which are set forth in the returns, are not classified; until Petitioners' counsel have seen the returns, they will not know what Petitioners are accused of having done, and cannot meaningfully interview Petitioners or begin to investigate or prepare their cases.

The returns also include (1) an unclassified discussion of the classified information in the returns; (2) an unclassified summary of the transcripts of the CSRT hearings, including any statement or testimony by Petitioners or their "personal representatives"; and (3) other unclassified information that other counsel have found highly useful in their representation of

other detainees. And, although counsel may not disclose classified information in the returns to Petitioners, knowing that information enables counsel to focus their investigation and preparation of Petitioners' cases and to seek from Petitioners and others facts pertinent to their "enemy combatant" designation.

Finally, Respondents speculate that providing the returns in this case would increase the risk of inadvertent disclosure – or other compromise – of classified information. (*Id.* at 13–14.) This speculation lacks basis. Only counsel who have been granted security clearances and submitted themselves to a stringent Protective Order may see the classified information in the returns. "The Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004). Counsel are unaware of any report that classified information provided by Respondents to cleared counsel in the detainee cases has been disclosed or otherwise compromised.

Though Respondents oppose the submission of factual returns, Respondents recognize that "Judges of this Court have ordered respondents to submit factual returns in cases that are otherwise stayed." See Mot. to Stay at 14. Respondents concede that they may be required to submit factual returns and in response, mainly contest the timing of submitting these returns. *Id.* Petitioners respectfully suggest Respondents be required to provide counsel with Petitioners' full returns in no more than 45 days, as this Court has ordered in *Al-Subaiy*, C.A. No. 05-1429-RMU, Aug. 22, 2005.

**5.      Any Stay Should Bar Respondents From Removing Petitioners From Guantánamo Without 30-days Advance Notice**

This Court, along with the Judges in at least 19 other cases, have prohibited Respondents from transferring or rendering detainees without providing counsel and the Court with 30-days

advance notice of the intended removal.  Some of those Judges have imposed this notice requirement by means of a preliminary injunction.[3]  Others, including this Court, have required advance notice as a condition of issuing a stay.[4]  Petitioners respectfully request that this Court similarly impose a 30-day advance-notice requirement as a condition of entering a stay in this case.

Petitioners have properly invoked the jurisdiction of this Court.  *See Rasul*, 124 S. Ct. at 2698.  Judge Joyce Hens Green has already ruled that similar Petitioners have stated actionable claims under the Due Process Clause and the Geneva Conventions.  For the United States to remove Petitioners to a country that would afford no such protections would be to flout the District Court's rulings and attempt to defeat this Court's jurisdiction.  Such a transfer would also violate basic international legal norms embodied not only in the Geneva Conventions but also the International Covenant on Civil and Political Rights and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.  Petitioners ask that their counsel be

---

[3]     *Al-Adahi, v. Bush*, 05-CV-00280 (GK) (D.D.C. Apr. 28, 2005); *Al Joudi v. Bush*, 05-CV-00301 (GK) (D.D.C. Apr. 4, 2005); *Al-Marri v. Bush*, 04-CV-2035 (GK) (D.D.C. Apr. 4, 2005); *Al-Mohammed v. Bush*, 05-CV-00247 (HHK) (D.D.C. Mar. 30, 2005); *Abdah v. Bush*, 04-CV-1254 (HHK) (D.D.C. Mar. 29, 2005).
[4]     *Al-Subaiy et. al. v. Bush*, C.A. No. 05-1453 (D.D.C. Sept. 19, 2005); *Hatim v. Bush*, C.A. No. 05-1429 (D.D.C. Aug. 22, 2005); *Al-Hela v. Bush*, 05-CV-01048 (RMU) (D.D.C. June 3, 2005); *Kurnaz v. Bush*, 04-CV-1135 (ESH) (D.D.C. Apr. 12, 2005); *Ameziane v. Bush*, 05-CV-00392 (ESH) (D.D.C. Apr. 12, 2005); *Abdullah v. Bush*, 05-CV-00023 (RWR) (D.D.C. Apr. 8, 2005); *Al Rashaidan v. Bush*, 05-CV-00586 (RWR) (D.D.C. Apr. 8, 2005); *El Banna v. Bush*, 04-CV-1144 (RWR) (D.D.C. Apr. 8, 2005); *Tumani v. Bush*, 05-CV-00526 (RMU) (D.D.C. Apr. 6, 2005); *Qayed v. Bush*, 05-CV-00454 (RMU) (D.D.C. Apr. 6, 2005); *Al-Wazan v. Bush*, 05-CV-00329 (PLF) (D.D.C. Apr. 1, 2005); *Al-Shihry v Bush*, 05-CV-00490 (PLF) (D.D.C. Apr. 1, 2005); *Al-Oshan v. Bush*, 05-CV-00520 (RMU) (D.D.C. Mar. 31, 2005).

given advance notice of any transfer to enable counsel the opportunity to contest their removal from Guantánamo and preserve the jurisdiction of the Court in this matter.[5]

### 6. Any Stay Should Explicitly Permit Petitioners To Seek Emergency Relief

Although the Court entered a stay in the *Al-Oshan, Al-Subaiy, Al-Helan* and *Hatim* cases, the Court explicitly provided that a "stay shall not prevent the parties from filing any emergency motion for relief." *See, e.g., Al-Subaiy,* 05-1453 (Sept. 19, 2005). As Judge Kessler noted in her decision granting petitioners the right to seek emergency relief despite a stay, "[c]oextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties." Mar. 31 Mem. Op., *Al-Joudi v. Bush,* No. 05-0520 (GK), (citing *Landis v. N. Am. Co.,* 200 U.S. 248, 256 (1936)). Petitioners respectfully request that any stay not prevent Petitioners from seeking emergency relief.

## IV. CONCLUSION

For the above reasons, the stay requested by the Government should be denied. Petitioners respectfully request that if a stay is entered by the Court, the stay be in the form of that already entered in *Al-Subaiy,* 05-1453 (Sept. 19, 2005). A copy of a Proposed Order is attached.

---

[5] Newspaper accounts demonstrate that Respondents have contemplated transferring or "rendering" detainees to foreign territories for torture or indefinite detention without due process of law. *See, e.g.,* Robin Wright and Josh White, *U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements with 10 Muslim Governments,* Wash. Post, Aug. 9, 2005, at A13. Because Counsel do not have access to any factual returns and are preparing this response prior to meeting with Petitioners themselves, Counsel necessarily lack specific information about Petitioners and must rely on general information relating to transfer and rendition. Because this lack of information is caused by Respondents, their complaint about the level of specificity in Petitioners' allegations, Mot. To Stay at 11, cannot be credited.

Dated:  October 20, 2005

Respectfully submitted,

Counsel for Petitioners:


_____/s/_____


Michael D. Hausfeld (DC153742)
Agnieszka M. Fryszman (DC459208)
Matthew K. Handley (DC489946)
Reena Gambhir
COHEN MILSTEIN HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500 - West Tower
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

John Holland (CO 5246)
Anna Cayton-Holland (CO 35811)
LAW OFFICES OF JOHN HOLLAND
2150 W. 29th Avenue - Suite 500
Denver, CO  80211
Tel:  (303) 860-1331
Fax:  (303) 832-6506

*Of Counsel*
Atif Ali Khan
ATIF ALI KHAN & ASSOCIATES
Advocates & Legal Consultants
Suite #9, First Floor
Cantonment Plaza, Saddar Road
Peshawar,
Pakistan
Tel:  (92-91) 279 007
Fax:  (92-91) 279 006

Barbara Olshansky (NY0057)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 614-6439
Fax:  (212) 614-6499