PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDUL RAHEEM GHULAM RABBANI,** *et al.*, ) <br> *Petitioners/Plaintiffs,* ) <br> ) <br> **v.** ) <br> ) <br> ) <br> **GEORGE W. BUSH,** *et al.*, ) <br> *Respondents/Defendants.* ) | Civil Action No. 05-01607(RMU) |

## REPLY IN FURTHER SUPPORT OF CROSS-MOTION TO STAY AND ABEY ACTION

Respondents fail to recognize that a majority of the Supreme Court has expressed an interest in reviewing the continued viability of habeas corpus petitions filed by Guantanamo detainees such as Petitioners. Therefore, this habeas action should be preserved – stayed and abeyed – in order that the Supreme Court may perform that review when Petitioners' remedies under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"), have been exhausted, and the Supreme Court has issued a final judgment regarding the constitutional sufficiency of that DTA process as a substitute for this habeas action.

## I.    THE SUPREME COURT HAS MADE CLEAR THAT IT IS EVENTUALLY LIKELY TO DECIDE WHETHER PETITIONERS' HABEAS ACTION MAY BE HEARD

Respondents do not contest that the right to petition for a writ of habeas corpus, provided in the Constitution, occupies a central position in Anglo-American law. By the end of the seventeenth century, "'the writ of habeas corpus [had become] the most usual remedy by which a man is restored again to his liberty, if he have been against law deprived of it.'" *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973) (*quoting Bushell's Case*, 124 Eng. Rep. 1006, 1007 (1670)). The right of habeas corpus was "'an integral part of our common-law heritage' by the

time the Colonies achieved independence," *Rasul v. Bush*, 542 U.S. 466, 473-74 (2004) (*quoting Preiser*, 411 U.S. at 485), and is expressly preserved in the Constitution. U.S. Const. art. I § 9, cl. 2.

The Supreme Court has consistently recognized the importance of the Great Writ, even during wartime. *See, e.g., Harris v. Nelson,* 394 U.S. 286, 292 (1969) ("There is no higher duty of a court . . . than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law."); *see also Hamdan v. Rumsfeld*, 126 U.S. 2749, 2799 (2006) (Breyer, J., concurring) ("The Constitution is best preserved by reliance on standards tested over time and insulated from the pressures of the moment."); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 561 (1976) ("The history of even wartime suspension of categorical guarantees, such as habeas corpus . . . cautions against suspending explicit guarantees.");.

In response to Guantanamo habeas petitioners' claim that the Military Commission Act's (MCA's),[1] suspension of the writ is unconstitutional, three justices dissented from the denial of certiorari, writing that the questions raised by the action "deserve this Court's immediate attention." *Boumediene v. Bush*, No. 06-1195 (April 2, 2007) (Breyer, J., joined by Souter and Ginsburg, JJ., dissenting), Slip Op. at 1. Two more justices voted to deny certiorari "at this time," pending development of what they find to be a necessary record for appropriate evaluation of the MCA's habeas-suspending provision. *Id.* at 1 (statement of JJ. Stevens and Kennedy). Although these five Justices disagreed on the timing of the review of the MCA's suspension of habeas corpus, their remarks strongly suggest the Supreme Court will eventually review the

---

[1] Pub. L. No. 109-366, 120 Stat. 2600 (Oct. 17, 2006).

constitutionality of the MCA's suspension provision.  This action, and the Petitioners' rights, should be preserved until that review can occur.

## II.    THIS ACTION SHOULD BE STAYED RATHER THAN DISMISSED PENDING EXHAUSTION OF NEW REMEDIES

Another reason to stay rather than dismiss this action is that the remedies Petitioners have been directed to exhaust were not available to Petitioners when this action was filed.  The Supreme Court has stated that, when plaintiffs failed to exhaust remedies that became available only after they filed their cases, the cases should be stayed if the new remedies must be exhausted.  *See, e.g., Gusik v. Schilder*, 340 U.S. 128, 133-34 (1950) ("[t]rial of the case . . . had ended before the effective date of Article 53 . . . We conclude that in the interests of justice the Court of Appeals, instead of reversing the District Court and ordering the petition to be dismissed, should [have] . . . ***held the case pending resort to the new remed**y* . . . .") ; *see also Rhines v. Weber*, 544 U.S. 269, 274 (2005).  The situation here is analogous.  The DTA's remedies did not become mandatory for Guantanamo detainees until enactment of the MCA in the fall of 2006 -- *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), had made it clear that habeas actions, like this action, filed prior to the enactment of the DTA in 2005, could proceed.  In these circumstances, this Court should stay and abey this action while the constitutional sufficiency of Petitioners' DTA remedies is tested.

## III.    DISMISSAL OF THIS ACTION WOULD PREJUDICE THE PETITIONERS

In explaining why they believed that an immediate grant of Certiorari was not appropriate, Justices Stevens and Kennedy expressly stated that, should Respondents take additional steps to prejudice the position of petitioners in seeking review in the Supreme Court, "courts of competent jurisdiction," including this Court, "should act promptly to ***ensure that the office and purposes of the writ of habeas corpus are not compromised.***"  *Boumediene v. Bush*,

No. 06-1195 at 2 (Breyer, J., dissenting), (quoting *Padilla v. Hanft*, 547 U.S. 1062, 1064 (2006)

(Kennedy, J., concurring in denial of certiorari)). But, according to the Respondents, dismissal

of this action would dissolve the protective order in this case.[2] This would jeopardize the

attorney-client relationship that effectively enables Petitioners to vindicate their rights and would

authorize Respondents to destroy relevant evidence.

### A.    Respondents Should not be Permitted to Disrupt Petitioners' Attorney-Client Relationships

The Protective Order in this action has governed communications between Petitioners

and counsel and has worked well. It is known and understood by all participants and Counsel

and Petitioners can continue to comply with it, and Respondents can continue to enforce it,

without significant misunderstandings or disputes. Petitioners have not yet filed a DTA petition

in the Court of Appeals and, in any event, the Court of Appeals has not issued a protective order

in the DTA cases currently pending before it and it may be months before it does so. In the

interim, Petitioners' counsel would have no right to communicate with their clients.

### B.    Respondents Should Not Be Permitted to Destroy Relevant Evidence

Dismissal of this action would also jeopardize in several ways the preservation of

evidence relevant to Petitioners' incarceration. For example, Respondents negotiated inclusion

---

[2] Although there is strong authority to the contrary, *see, e.g., Gambale v. Deutsche Bank* AG, 377 F.3d 133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), the Government insists that the provisions of the protective order (except for certain provisions imposing continuing obligations on counsel for Petitioners) would be automatically dissolved if this case is dismissed. On information and belief, the Government is allowing counsel for detainees without a protective order to communicate and visit with their clients only if they provisionally accept the protective order the government has urged the Court of Appeals to adopt. This proposed order dramatically narrows the topics Petitioners can discuss with their counsel, probably lifts the attorney-client privilege from many communications between Petitioners and counsel, and greatly limits counsel's ability to communicate with or effectively represent their clients. Counsel's acceptance of such conditions would lend credence to the apparent view of many detainees that lawyers can do nothing for them and merely add a patina of legitimacy to the detainees' incarceration.

in the Protective Order in this Court of ¶ 45, which permits them to destroy records relating to

Petitioners once this action is terminated. When this provision was adopted, of course, none of

the participants anticipated the present exhaustion of remedies situation, in which this action

might be dismissed but later revived. In view of ¶ 45, it would be inappropriate to dismiss this

action, thereby enabling Respondents to destroy evidence relevant and admissible in a future

habeas action challenging the legitimacy of Petitioners' incarceration.

## IV.    EVEN IF THE COURT ACCEPTS THE GOVERNMENT'S VIEW, THIS ACTION SHOULD NOT BE DISMISSED UNTIL THE MANDATE ISSUES IN BOUMEDIENE

The Court of Appeals has not yet issued the mandate in *Boumediene. Boumediene v.*

*Bush.* 476 F.3d 981 (D.C. Cir. 2007). Petitioners in that case have asked the Court of Appeals to

hold the case in abeyance. Respondents' argument that this action should be dismissed is based

primarily on the Court of Appeals' decision in *Boumediene.* As long as the Court of Appeals has

not issued the mandate in that case, dismissal here would be inappropriate, even if the

Respondent's other arguments were accepted.

## CONCLUSION

For the reasons stated in this Reply Brief and in Petitioners' Opposition To Motion To

Dismiss And Cross-Motion To Stay And Abey Action Pending Exhaustion Of Remedies Under

The Detainee Treatment Act, this Court should stay and abey this action pending exhaustion of

Petitioners' remedies pursuant to the DTA and MCA. This is the only course of action

consistent with the stated positions of five justices of the United States Supreme Court and the

only course that effectively preserves Petitioners' attorney-clients relationships and the evidence

relating to Petitioners' incarceration. [3]

---

[3] Should the Court determine to grant Respondents' Motion to Dismiss, for the reasons set forth
in this brief and Petitioners' opening brief, this action should be dismissed *without prejudice* to

Dated:  May 24, 2007

Respectfully submitted,

Counsel for Petitioners:

Michael D. Hausfeld (DC 153742)
Agnieszka Fryszman (DC 459208)
Avi S. Garbow (DC 445399)
Matthew K. Handley (DC 489946)
Matthew B. Kaplan (DC 484760)
Jason M. Leviton (DC 495460)
**Cohen, Milstein, Hausfeld & Toll, P.L.L.C.**
1100 New York Ave, N.W., Suite 500
Washington, DC 20005
Tel:  (202) 408-4600
Fax: (202) 408-4699

John Holland (CO 5246)
Anna Cayton-Holland (CO 35811)
**Law Offices of John Holland**
2150 W. 29th Ave, Suite 500
Denver, CO 80211

its refiling should the suspension of habeas corpus provided for in the MCA be held
unconstitutional.