# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:                                ) MISC. No. 08-0442
                                      )
GUANTANAMO BAY                        )
DETAINEE LITIGATION                   )
                                      )

DECLARATION OF MICHAEL V. HAYDEN,
DIRECTOR, CENTRAL INTELLIGENCE AGENCY

I, MICHAEL V. HAYDEN, hereby declare and state:

1. I am the Director of the Central Intelligence Agency (CIA) and have served in this capacity since 30 May 2006. In my capacity as Director, I lead the CIA and manage the Intelligence Community's human intelligence and open source collection programs on behalf of the Director of National Intelligence (DNI). I have held a number of positions in the Intelligence Community, including Principal Deputy Director of National Intelligence, from April 2005 to May 2006; Director, National Security Agency/Chief, Central Security Service (NSA/CSS), Fort George G. Meade, Maryland, from March 1999 to April 2005; Commander of the Air Intelligence Agency and Director of the Joint Command and Control Warfare Center, both headquartered at Kelly Air Force Base, Texas, from January 1996 to September 1997; and Director, Intelligence Directorate, U.S. European Command, Stuttgart, Germany, from May 1993 to October 1995.

2. I was a four-star general in the United States Air Force until my retirement from the Air Force on 1 July 2008 and have held senior staff positions at the Pentagon, the National Security Council (NSC), and the U.S. Embassy in Sofia, Bulgaria, as well as serving as Deputy Chief of Staff for United Nations Command and U.S. Forces Korea. I entered active duty in 1969 as a distinguished graduate of the Reserve Officer Training Corps program.

3. I make the following statements based upon my personal knowledge and information provided to me in my official capacity.

4. The purpose of this declaration and my accompanying classified declaration is to describe for the Court why the CIA is experiencing delays in providing documents and information to the Department of Justice (DOJ) and Department of Defense (DOD) for use in habeas litigation.

I. Purpose Of This Declaration

   A. The Boumediene Decision

5. Through the exercise of my official duties, I have been advised of the U.S. Supreme Court's decision in Boumediene v. Bush, 128 S. Ct. 2229 (2008), and its impact on the habeas corpus litigation in the United States District Court for the District of Columbia, which involves individuals detained by the United States as alien enemy combatants at the U.S. Naval Base

2

Guantanamo Bay, Cuba. I understand that a majority of these pending habeas petitions have been transferred to this Court for initial rulings on common issues and administrative matters. I also am aware that the Court has issued a scheduling order that requires the Government to file fifty factual returns to the habeas petitions per month until the Government has responded to all of the petitions.

6. Since the Boumediene decision and the entry of the Court's scheduling order, the CIA has worked diligently to establish a process and devote the personnel resources necessary to review the large volume of documents and information that the Government proposes to include in its factual returns. In light of the large quantity of cases and the very tight schedule, the CIA has consolidated and streamlined the review process to the maximum extent possible without sacrificing the care and deliberation that must be employed to safeguard the national security by protecting classified foreign intelligence sources and methods from unauthorized disclosure. I have made it clear to my senior managers that meeting the Court's schedule is a top priority for the CIA. To that end, I have allocated additional personnel to those components involved in the habeas review process and have directed CIA managers to ensure that such

personnel have all the resources that they need.[1] Despite this effort, the CIA has not been able to complete its review of all of the first fifty factual returns by 29 August 2008. In this declaration, I will describe the classified information implicated by the habeas litigation, the purpose of the CIA review process, the nature of the review process, and the delays in completing that process for all fifty returns.

7. This unclassified declaration describes, to the extent possible on the public record, the reasons for the delay in completing all of the factual returns. I respectfully refer the Court to my classified declaration, which is submitted for the Court's *in camera, ex parte* review because it contains classified information that cannot be disclosed publicly in my unclassified declaration.

B. CIA Information at Issue

8. Much of the information upon which DOD relied in making its enemy combatant determinations and upon which DOJ proposes to rely in its factual returns derives from classified CIA intelligence reports. CIA intelligence reports are classified because they contain information that was clandestinely acquired by the CIA; that is, information that is not available from any other source. CIA intelligence reports also are classified

---

[1] More than fifty CIA attorneys, paralegals, subject matter experts, and classification officials are involved in the habeas review process.

4

because public disclosure of the information contained therein would tend to reveal the clandestine intelligence activities, sources, and methods by which the CIA collected the information. Unauthorized disclosure of the classified information in CIA intelligence reports reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, that I describe in my classified declaration.

9. Before the CIA can authorize DOD and DOJ to include classified CIA documents or information in the Government's factual returns, the CIA must first determine whether disclosure of such information to the Court, petitioners' counsel, petitioners, or the public could be expected to damage the national security. This predictive judgment cannot be made on an abstract basis. Rather, such judgments must be made by experienced intelligence professionals after review on a document-by-document basis. The classified CIA information implicated by the habeas litigation falls broadly into three categories: a) foreign government information; b) foreign relations and foreign activities of the United States; and c) intelligence activities, sources, and methods;. I will discuss each of these categories of classified information in turn.

10. First, much of the classified CIA information implicated by the habeas litigation was provided to the CIA by

5

the intelligence or security services of foreign governments with whom the CIA has confidential intelligence-sharing agreements. Second, much of the classified CIA information implicated by the habeas litigation concerns the foreign relations and foreign activities of the United States. Finally, much of the classified CIA information implicated by the habeas litigation was collected through clandestine intelligence activities, sources, and methods.

C. Damage to the National Security

11. I recognize that the Court has not ordered any classified information to be publicly disclosed. Nevertheless, exceptionally grave damage to the national security reasonably could be expected to result if the CIA's deliberative review process for the disclosure of classified information is not followed during the habeas litigation.

12. I understand that more than 200 habeas petitions have been filed in the District Court. I also understand that each detainee typically is represented by several attorneys. As a result, the CIA documents cited in the Government's factual returns will be disclosed to several hundred private attorneys who are not employees of the U.S. Government and who are not trained in handling classified information. With so many untrained individuals allowed access to such sensitive information, I believe that unauthorized disclosures, even if

6

inadvertent, are not only probable, but inevitable. The degree to which access to much of the classified information implicated by the habeas litigation is strictly controlled and limited to only a small number of employees of the federal government is described more completely later in my classified declaration. The Executive order and agency regulations controlling access to classified information recognize that limiting the number of people with access to classified information is a necessary step in safeguarding such information. If the CIA does not follow its rigorous review process for documents implicated by the habeas litigation, the U.S. Government will not be able to adhere to its carefully administered policy of compartmenting its most highly sensitive information, which would unacceptably increase the likelihood of unauthorized disclosures.

13. CIA subject matter experts, of whom there are a limited number, must conduct a line-by-line review of documents determined by DOD and DOJ to be pertinent to a petitioner's status as an enemy combatant to determine whether the document can be provided in redacted form to petitioner's counsel or if it must be provided only to the Court, or possibly not at all. As mentioned above, significant CIA personnel and resources have been redirected to meet the Court's habeas schedule. The redirection of these resources is in an effort to attempt to comply with the Court's habeas schedule. Were the CIA to cut

7

corners in its review process or conduct the process without sufficient deliberation regarding important U.S. national security interests, it is very possible that intelligence sources and methods could be compromised and foreign relations disrupted. In that circumstance, there would be exceptionally grave damage to the national security of the United States, particularly to the CIA's primary goal of protecting the country from terrorist attacks.

II. **Classification Authority**

14. The CIA was established by section 104(a) of the National Security Act of 1947 (the Act), as amended, 50 U.S.C.A. § 403-4. Section 104A of the Act, 50 U.S.C.A. § 403-4a, established the position of Director of the Central Intelligence Agency (DCIA), whose duties and responsibilities include serving as head of the CIA and collecting information through human sources and by other appropriate means; correlating and evaluating intelligence related to the national security and providing appropriate dissemination of such intelligence; providing overall direction for coordination of the collection of national intelligence outside the United States through human sources by elements of the intelligence community authorized to undertake such collection; and performing such other functions and duties related to intelligence affecting the national security as the President, or the DNI, may direct. A more

8

particularized statement of the authorities of the DCIA and the CIA is set forth in sections 1.6 and 1.7 of Executive Order 12333, as amended.[2]

15. Section 102A(i)(1) of the Act, 50 U.S.C.A. § 403-1(i)(1), provides that the DNI shall protect intelligence sources and methods from unauthorized disclosure. Under the direction of the DNI pursuant to section 102A, and in accordance with section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C.A. § 403g, and section 1.6(d) of Executive Order 12333, as amended, the Director of the CIA is responsible for protecting CIA intelligence sources and methods from unauthorized disclosure. The documents implicated by the habeas litigation contain information that, if disclosed, would tend to reveal intelligence sources and methods.

16. In accordance with section 1.3(a)(2) of Executive Order 12958,[3] the President has authorized me to exercise original TOP SECRET classification authority.[4] Pursuant to that authority, I have portion-marked each paragraph of my

---

[2] Exec. Order 12333, reprinted as amended in 50 U.S.C.A. § 401 note 24 (West. Supp. 2008) and revised by Exec. Order No. 13470, 73 Fed. Reg. 45325 (July 30, 2008).
[3] Executive Order 12958 was amended by Executive Order 13292. See Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003). All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292. See Exec. Order No. 12958, 3 C.F.R. 333 (1995), reprinted as amended in 50 U.S.C.A. § 435 note at 193 (West Supp. 2008).
[4] Order of President, Designation under Executive Order 12958, 70 Fed. Reg. 21,609 (Apr. 21, 2005), reprinted in U.S.C.A. § 435 note at 205 (West Supp. 2008).

9

classified declaration with the level of classification and control markings necessary for the full protection of the information in that paragraph. The marking "U" denotes unclassified information; "S" denotes information classified at the SECRET level because its unauthorized disclosure reasonably could be expected to cause <u>serious</u> damage to the national security; and "TS" denotes information classified at the TOP SECRET level because its unauthorized disclosure reasonably could be expected to cause <u>exceptionally grave</u> damage to the national security. The portion-markings of each paragraph also may identify whether additional dissemination or access controls apply.

    17. Section 4.3 of Executive Order 12958 provides that certain senior U.S. officials are authorized to establish "Special Access Programs" upon a finding that "the vulnerability of, or threat to, specific information is exceptional" and "the normal criteria for determining eligibility for access applicable to information classified at the same level are not deemed sufficient to protect information from unauthorized disclosure." The Director of the CIA is authorized to establish Special Access Programs for intelligence activities, sources, and methods. Such intelligence programs are called "Sensitive Compartmented Information Programs," or SCI Programs.

18. The portion markings also contain the dissemination controls ORCON, or OC, and NOFORN, or NF. ORCON (which stands for "Originator Controlled") means that the information cannot be further disseminated without authorization from the originating agency, in this case the CIA. NOFORN (which stands for "No Foreign Dissemination") means that the information can be disseminated to U.S. persons only and cannot be disseminated to foreign nationals.

III. Review Process in Habeas Litigation

19. The CIA did not receive the first draft factual returns until 12 August 2008, and received the last batch of factual returns as recently as 25 August 2008. Nevertheless, the CIA managed to complete its review of a significant number of returns by the 29 August 2008 deadline.[5] As a result of its initial efforts, the CIA expects to be able to complete its review of any particular factual return within thirty days of receipt of the draft return by the CIA. With the benefit of increased production of draft factual returns by DOJ and lessons learned in completing its review of this initial set of returns, the CIA going forward expects to be able to increase its rate of completing reviews towards accommodating the Court's schedule of filing fifty factual returns per month.

---

[5] In addition to the factual returns filed in petitions pending before this Court, the Government also filed during August 2008 a number of factual returns in petitions pending before Judge Leon and Judge Sullivan.

11

IV. Conclusion

20. In my classified declaration, I have described the basis for my judgment that abandoning the rigorous deliberation of the CIA's review process for the habeas litigation reasonably could be expected to cause exceptionally grave damage to the national security by the disclosures of very sensitive information. If the Court desires, I am willing to appear before the Court to provide additional information or answer any questions. If my appearance is necessary, I request that the Court conduct the proceedings on an *ex parte* basis so that I can elaborate on the issues described in my classified declaration.

* * * *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of August, 2008.

Michael V. Hayden
Director
Central Intelligence Agency

12