UNCLASSIFIED//FOR PUBLIC RELEASE

FILED WITH
COURT SECURITY OFFICER
4/7/09
DATE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ABDUL RAHEEM GULAM
RABBANI *et al.*,

        Petitioners,       :       Civil Action No.:    05-1607 (RMU)

        v.,

BARACK OBAMA *et al.*,

        Respondents.

### MEMORANDUM OPINION

#### GRANTING IN PART AND DENYING IN PART THE PETITIONER'S MOTION FOR ADDITIONAL DISCOVERY

This matter comes before the court on the petitioner's motion for additional discovery. Petitioner, Abdul Raheem Ghulam Rabbani, requests that the court order the respondents to disclose several[1] categories of information under § I.D.1 or § I.E.2 of the Case Management Order ("CMO").[2] Petr's Mot. at 1. Section I.D.1 requires the respondents to "disclose to the petitioner all reasonably available evidence in its possession that tends materially to undermine the information presented to support the government's justification for detaining the petitioner." CMO § I.D.1. And § I.E.2 permits "limited discovery" upon a "narrowly tailored request," specifying the discovery sought and "likely to produce evidence that demonstrates that the petitioner's detention is unlawful." CMO § I.E.2. The respondents oppose the

---

[1]    The petitioner withdrew one of his requests in his reply. Petr's Reply at 4 (stating that "[b]ecause Counsel have already learned the name of the alleged driver, Petitioner withdraws Request No. 1").

[2]    The Case Management Order was issued November 6, 2008 and amended December 16, 2008. The court refers to the integrated Case Management Order as the CMO.

UNCLASSIFIED//FOR PUBLIC RELEASE

petitioner's requests under these provisions. *See generally* Resps.' Opp'n. For the

following reasons the court grants in part and denies in part the petitioner's motion.



2

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

███████████████████████ The petitioner contends this information ultimately drives toward the underlying reliability of the driver's statements. Petr's Mot. at 2.

The respondents argue that the petitioner's request is "premised on pure speculation that the discovery sought will assist him in preparing his traverse." Resps.' Opp'n at 6-7. ████████████████████████

████████████████████████████████████████

█████████████████ Finally, they aver that the petitioner ignores "the burden on and disruption to the Government associated with searching for the information in question and clearing for production to opposing counsel any responsive materials identified." *Id.* at 7.

The petitioner does not specify under which section of the CMO the court should analyze the discovery request. Because the respondents have already stated that they have provided the evidence required under § I.D.1, Resps.' Opp'n at 8, the court analyzes the petitioner's request under § I.E.2. To begin, the respondents do not dispute that they rely on ████████████████████████████ to support the lawfulness of his detention; yet they provide no information regarding the circumstances under which this statement was made, recorded and transmitted to U.S. officials. With such bare-bones statements to examine, the petitioner's modest request for additional context is eminently reasonable and satisfies the first two prongs of the § I.E.2 analysis.[3] ████████████████████████

---

[3]    The petitioner argues in his motion that his request is "discrete and narrow" under the first two prongs of § I.E.2. Petr's Mot. at 3. The respondents remain silent on this point, and therefore, the court treats it as conceded. *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (noting that arguments not addressed are treated as conceded).

3

███████████████████████████████████████████

███████████████████ the circumstances under which the statement was made are likely to produce information aiding the petitioner, thereby satisfying the third prong of § I.E.2.[4] Although the court need not decide whether contextual information must necessarily be produced for all statements on which the respondents intend to rely in their case in chief to resolve this dispute, the court notes that other judges in this district have ordered such blanket disclosures. *Batarfi v. Gates*, No. 05-409 (Feb. 10, 2009) at 2 (Sullivan, J.) (ordering the respondents to "produce all the evidence relevant to the reliability of witnesses whose statements are included in government's case, including all evidence suggesting that such witnesses are not reliable or credible"); *Ghanem v. Obama*, No. 05-1638 (Feb. 6, 2009) at 1-2 (Kollar-Kotelly, J.) (ordering the respondents to "disclose . . . all statements, in whatever form, whether cumulative or not, that have not previously been disclosed, made by the six individuals named in the Factual Return"); *Al-Mithali v. Obama*, No. 05-2186 (Dec. 2, 2008) at 2 (Huvelle, J.) (requiring the respondents to produce, *inter alia*, the circumstances under which statements were made that the respondents rely upon in their factual return). The respondents do not address, let alone undercut, the weight of these decisions, and the court affirms the sensibleness of

---

[4] Without further explanation, the respondents' boilerplate objection that the petitioner ignores "the burden on and disruption to the Government associated with searching for the information in question and clearing for production to opposing counsel any responsive materials identified" rings hollow. Resps.' Opp'n at 7. Accordingly, the petitioner's specific request has satisfied the fourth prong of the § I.E.2 analysis.

UNCLASSIFIED//FOR PUBLIC RELEASE

such an approach in this case.⁵  Accordingly, the court grants the petitioner's motion,

under § I.E.2, with respect to materials related to



---

⁵  Although one of this court's decisions in *Hatim v. Bush*, No. 05-1429 (Jan. 7, 2009)
(Order) addressed a similar request, the analysis largely turned on an application of §
I.D.1.  Therefore, that decision is of no moment here because the court proceeds solely
under § I.E.2.

⁶  The respondents also contend that the court's February 17, 2009 decision in *Hatim*
forecloses the petitioner from raising issues regarding errors in translating.  *Hatim*, No.
05-1429 (Feb. 17, 2009) at 2.  In *Hatim*, the court reasoned that the petitioner did not
meet his burden of demonstrating that the requested information was likely to produce
exculpatory evidence solely because translation errors "could occur." *Id.*  The
petitioner's discovery requests in *Hatim* were overly broad, and the court's opinion does
not reflect whether the documents purportedly subject to translation error had been
"lightly edited." *See generally id.*  Thus, the reasoning in *Hatim* cannot be applied here
where the request is narrow and the copy of the document indicates that it is not a true
reflection of the original.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

impossible to determine, based on the current production, which parts of the letter are the product of editorializing and which are accurate translations of the original text. This fact alone casts a long shadow over the entire document relied upon by the respondents and provides an adequate basis for requesting production of the source document. *See Al Odah v. United States*, No. 02-474 (Feb. 13, 2009) at 5 (ordering the respondents to produce an original copy of a letter relied upon in the factual return and to disclose the circumstances surrounding the writing and receipt of this letter). Again, the court clarifies that it need not decide today whether the respondents must produce all source documents on which they rely; suffice it to say that the facts here clearly warrant production ████████████████ The court, therefore, grants the petitioner's motion as to this request.

### 3. Detention History and Evidence of Torture

The petitioner next requests documents describing all locations where he was detained by the United States. Petr's Mot. at 4. Because the petitioner has consistently maintained that he has been tortured while incarcerated by the United States, he believes that statements made in interrogations subsequent to the torture are tainted. *Id.*; Petr's Reply at 9-13. The respondents retort that production of this documentation would create an enormous burden and, in any event, the request seems to be geared toward an impermissible challenge of conditions of confinement. Resps.' Opp'n at 10-11. In addition, the respondents state that the petitioner's request is not sufficiently narrow because the petitioner, "who has first hand knowledge of any relevant facts," should recount specific facts of the alleged torture. *Id.* at 12. The petitioner provides factual backing for the request in his reply. Petr's Reply at 9-12.

6

UNCLASSIFIED//FOR PUBLIC RELEASE

The petitioner not only details a factual basis for his request for the first time in his reply, but he also states for the first time that he is seeking these records under §§ I.D.1, I.E.1 and I.E.2. Petr's Reply at 16. Yet, he does not describe how the facts in this case satisfy the standards set forth in each of these sections. *See generally id.* Furthermore, the petitioner raises for the first time in his reply legal arguments in support of his assertion that interrogation methods employed by the United States tainted subsequent statements made by the petitioner. *Compare* Petr's Mot. at 4 *with* Petr's Reply at 13-16. Back-loading briefing in this way undercuts the adversarial process by depriving the court of developed arguments. *See Presbyterian Med. Ctr. of the Univ. of Pa. Health Sys. v. Shalala*, 170 F.3d 1146, 1152 (D.C. Cir. 1999) (holding that a court need not consider arguments raised for the first time in a reply brief); *Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 n.4 (D.C. Cir. 1990) (requiring parties to raise all of their arguments in their opening briefs "to prevent sandbagging"). Accordingly, the court denies the petitioner's request without prejudice. Should the petitioner choose to re-submit his request, the court encourages the parties to focus on the alleged taint on the petitioner's statements relied on by the government. Specific attention should be paid to the nature of the alleged coercive interrogation methods employed and the temporal proximity between the allegedly coercive acts and the petitioner's statements in light of analogous case law and the applicable standards set forth in the CMO.

**4. Statements Made Indicating that the Petitioner Was Not a Member of Al Qaida**

The petitioner asserts that § I.D.1 of the CMO requires the respondents to produce "all documents in which Petitioner is mentioned . . . and documents that relate to the circumstances under which the statements . . . were made." Petr's Mot. at 5. The

UNCLASSIFIED//FOR PUBLIC RELEASE

petitioner also contends that the respondents should disclose "all documents relating to statements made by Petitioner concerning his own role and his own actions or that relate to the subject matter in the Amended Factual Return."[7] *Id.* at 5. The petitioner reasons that statements that depict him as a non-al-Qaida member are exculpatory and undermine the respondents' justifications for continued detention. *Id.* The respondents state that they have produced all reasonably available exculpatory evidence. Resps.' Opp'n at 15.

The court denies the petitioner's requests as worded because they are overly broad and misapprehend the limitations set forth in § I.D.1, which states that the exculpatory information must be both "reasonably available" and "tend[] to materially undermine" the respondents' justifications for detention. CMO § I.D.1. But the court clarifies that the respondents' affirmative duty to produce exculpatory evidence includes statements made by the petitioner and by individuals upon whose statements the government relies that deny or materially undermine the petitioner's purported affiliation with al-Qaida. The court, however, declines to rule on whether § I.D.1 includes a non-cumulative limitation, as the parties have not fully briefed this issue.[8] Reply at 17; *Presbyterian*

---

[7]   The petitioner, in his reply, raises a new and perplexing argument, namely, that § I.E.1 applies to the petitioner's request for "all documents relating to statements made by Petitioner concerning his own role and his own actions or that relate to the subject matter in the Amended Factual Return." Petr's Reply at 17-19. The petitioner fails to acknowledge, much less reconcile, the fact that § I.E.1 only applies to statements "made or adopted by the petitioner that the government relies on to justify detention." The court, however, need not address the petitioner's argument raised for the first time in his reply. *Presbyterian Med. Ctr. of the Univ. of Pa. Health Svs. v. Shalala,* 170 F.3d 1146, 1152 (D.C. Cir. 1999).

[8]   The court also notes that it is likely that the parties would have avoided many of the briefing issues brought to light in this Memorandum Opinion if they had complied with Local Civil Rule 7(m), which requires the parties to confer "in a good-faith effort to determine whether there is any opposition to the relief sought *and, if there is opposition, to narrow the areas of disagreement.*" LCvR 7(m) (emphasis added).

UNCLASSIFIED//FOR PUBLIC RELEASE

*Med. Ctr. of the Univ. of Pa. Health Sys.*, 170 F.3d at 1152.  A schedule for supplemental briefing is provided in the Order accompanying today's Memorandum Opinion.

## 5. Information Regarding Bounties

The petitioner argues that the respondents are required to produce information regarding whether ██████████████████████████ ██████ "received any payment or incentives for his statements." Petr's Mot. at 2,[*] and "all documents containing information relating to any fees, bounties, or other monetary or non-monetary remuneration or consideration given to third parties for the apprehension, transfer into the government's custody, or investigation of Petitioner," *id.* at 6.  As the court stated in its *Hatim* decision, the respondents are obligated to produce these materials (if they exist) under § I.D.1.  *Hatim v. Obama*, No. 05-1429 (Jan. 7, 2009) (Mem. Order).

## 6. Seven Enclosures

As for the petitioner's final request for "7 enclosures" ██████████████ ██████ the petitioner asserts that they are reasonably likely to produce exculpatory evidence because they "were used to facilitate the interview described in this exhibit." Petr's Mot. at 6.  The respondents retort that the petitioner's request is mere speculation and reiterate that they do not rely on the additional materials mentioned in the report – only the report itself – to demonstrate that the petitioner's detention is lawful.  Resps.' Opp'n at 20.  The petitioner's reply does nothing to explain how the enclosures would undermine the respondents' bases for detaining the petitioner.  Because simple "use" in

---

[*] The court already determined that the respondents must produce this information under § I.E.2, and includes the request here simply to clarify that the respondents already had an obligation to produce the information under § I.D.1 to the extent it was "reasonably available."  CMO § I.D.1.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

"facilitat[ing]" an interview of the petitioner is not sufficient to demonstrate that the enclosures are likely to produce evidence that the petitioner's detention is unlawful, the court denies the petitioner's request.

For the foregoing reasons, the court grants in part and denies in part the petitioner's motion for additional discovery. An Order consistent with this Memorandum Opinion is issued separately and contemporaneously this 7th day of April, 2009.

RICARDO M. URBINA
United States District Judge

UNCLASSIFIED//FOR PUBLIC RELEASE