UNCLASSIFIED//FOR PUBLIC RELEASE



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED WITH THE
COURT SECURITY OFFICER
CSO: A-Strauss
DATE: 7/24/09

| | | |
|---|---|---|
| ABDUL RAHEEM GHULAM RABBANI *et al.*, | : : : | |
| Petitioners, | : : | Civil Action No.: 05-1607 (RMU) |
| v. | : : | Re Document No.: 182 |
| BARACK OBAMA *et al.*, | : : | |
| Respondents. | : | |

## MEMORANDUM OPINON

### GRANTING IN PART AND DENYING IN PART THE PETITIONER'S MOTION FOR SUPPLEMENTAL DISCOVERY

### I. INTRODUCTION

This case comes before the court on the motion of petitioner Abdul Raheem Ghulam Rabbani (ISN 1460) for supplemental discovery. The petitioner seeks the production of certain materials pursuant to §§ I.D.1, I.E.1 and I.E.2 of the amended Case Management Order ("CMO"),[1] which govern the government's discovery obligations in these habeas proceedings. For the reasons stated below, the court grants in part and denies in part these requests.

### II. THE CMO

By way of background, § I.D.1 of the CMO requires the government to "disclose to the petitioner all reasonably available evidence in its possession that tends materially to undermine the information presented to support the government's justification for detaining the petitioner."

---

[1] Judge Hogan issued the Case Management Order on November 6, 2008. On November 10, 2008, this court issued a Supplemental Order Regarding Case Management. Judge Hogan then issued an Order amending the November 6, 2008 Case Management Order on December 16, 2008. Finally, this court issued an Omnibus Order regarding the Case Management Order on April 23, 2009. The court refers to the integrated Case Management Order as the CMO.



UNCLASSIFIED//FOR PUBLIC RELEASE



CMO § I.D.1. Section I.E.1 requires the government, upon the petitioner's request, to provide three categories of information, provided the information is reasonably available. *Id.* § I.E.1; Omnibus Order (Apr. 23, 2009) (reading the "reasonably available" requirement into § I.E.1). These three categories of information are:

> (1) any documents and objects in the government's possession that the government relies on to justify detention; (2) all statements, in whatever form, made or adopted by the petitioner that the government relies on to justify detention; and (3) information about the circumstances in which such statements of the petitioner were made or adopted.

CMO § I.E.1.

Section I.E.2 of the CMO provides for the disclosure of materials upon a showing of good cause by the petitioner. CMO § I.E.2. A request for documents under this provision must be narrowly tailored, specify the discovery sought and explain why the request, if granted, would likely produce evidence that demonstrates that the petitioner's detention is unlawful. *See id.* If the petitioner's request satisfies these criteria, the government must offer specific facts explaining how the request, if granted, would place an undue burden on the government. *See id.*; Omnibus Order (Apr. 23, 2009).

The CMO defines "reasonably available evidence" as "evidence contained in any information reviewed by attorneys preparing factual returns for all detainees; it is not limited to evidence discovered by the attorneys preparing the factual return for the petitioner." CMO § I.D.1. As this court has clarified, "reasonably available evidence" also includes "information compiled pursuant to Executive Order 13,492; detainees' medical records; and information within the possession or control of the director of the Joint Intelligence Group of the Joint Task Force-Guantanamo." Omnibus Order (Apr. 23, 2009); *see also In re Guantanamo Bay Detainee Litig.*, No. 08-0442 (D.D.C. June 10, 2009) (Order) (denying the government's motion to

UNCLASSIFIED//FOR PUBLIC RELEASE



reconsider numerous orders holding that materials assembled as part of Executive Order 13,492 are "reasonably available"). With these standards in mind, the court turns to the petitioner's motion.

## III. ANALYSIS

### A. All Forms of Statements Made by the Petitioner on Which the Government Relies

The petitioner requests the production of "all audio or video tapes, transcripts, contemporaneous notes, reports of interrogation, or other records of statements made by Petitioner" on which the government relies to justify detention. *See* Petr's Mot. at 3-4. He contends that to date, the government has produced only a few selected third-party interrogation summaries reflecting such statements. *Id.* at 4; Petr's Reply at 1-2. The petitioner argues that § I.E.1 of the CMO demands the production of all records of statements made by the petitioner on which the government relies. Petr's Mot. at 5-7; Petr's Reply at 2-3. The government responds that § I.E.1 requires the government to produce only those versions of a statement upon which it intends to rely. Govt's Opp'n at 14.

Yet as the government acknowledges in its opposition, this court and others have already observed that the plain language of § I.E.1(2) requires the production of all transcripts, translations and all video and audio recordings of statements made by the petitioners on which the government relies. *Tumani v. Obama*, No. 05-0526 (June 2, 2009) (Mem. Op.) at 9-10; *Hatim v. Obama*, No. 05-1429 (Feb. 17, 2009) (Mem. Order) at 2-3; *see also Anam v. Obama*, 2009 WL 1322637, at *1 (D.D.C. May 11, 2009) (directing the government to disclose "*all* forms of the statements made or adopted by the petitioner that the government relies on to justify detention" including any audio or video recordings, transcripts, translations, and



3

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



contemporaneous notes or records); *Ghanem v. Obama*, 598 F. Supp. 2d 41, 43 (D.D.C. 2009) (ordering the government to produce all reasonably available forms of the statements on which the government relies); *Zaid v. Bush*, 596 F. Supp. 2d 11, 12 (D.D.C. 2009) (observing that "[a]s written, section I.E.1(2) requires that if respondents rely on one of the petitioner's statements to justify detention, then they must produce *all forms of that statement*"). Accordingly, the government shall produce *all* forms of any statements made by the petitioners, including any records, transcripts, translations and contemporaneous notes or records, on which it relies and that are reasonably available.[2]

### B. Information About the Circumstances Under Which the Statements of the Petitioner Were Made or Adopted

The petitioner requests the production of the following materials: unredacted interrogation plans for the petitioner from 2002 to the present; interrogation plan forms, logs or similar records of interrogation sessions from 2002 to the present; documents describing or reporting on any actions to prepare or "soften up" the petitioner for interrogation and the "References" used for authorized interrogation techniques.[3] Petr's Mot. at 10-11. The petitioner contends that these materials constitute "circumstances" evidence that must be produced pursuant to § I.E.1(3) of the CMO. *Id.* at 7-11; Petr's Reply at 3-9. The petitioner asserts that other than one heavily redacted interrogation plan, which does not cover all the interrogations

---

[2]   The court's conclusion is not intended to affect the compromise reached by the parties, reflected in the Joint Status Report submitted on June 11, 2009, regarding materials in the possession of the director of the Joint Intelligence Group of the Joint Task Force-Guantanamo. *See* Joint Status Report at 2.

[3]   The request for "References" refers to § 24 of the interrogation report produced by the government, which bears the heading "References Used for Authorized Interrogation Techniques." This section lists a number of documents, such as a "Memorandum from the Secretary of Defense to the Commander, US Southern Command Dated: 16 April 2003," which the petitioner contends outlined and defined the interrogation techniques authorized for use on the petitioner. Petr's Mot., Ex. 1 at 7; Petr's Reply at 8.



UNCLASSIFIED//FOR PUBLIC RELEASE

relied on by the government, one interrogation plan form and certain FD-302 reports, the government has produced no "circumstances" evidence. Petr's Reply at 4.

The government responds that it has already produced all reasonably available "circumstances" evidence. Govt's Opp'n at 15-17. It contends that the petitioner is not entitled to the redacted portion of the one interrogation plan that was produced because that portion consists of "purely internal administrative information, pertains to other individuals, or is source-identifying, and does not support a determination that petitioners are not enemy combatants." *Id.* at 15-16. The government further contends that "Reference" materials relied on for authorized interrogation techniques do not fall within the scope of § I.E.1. *Id.* at 17.

As previously discussed, § I.E.1 of the CMO requires the production of "information about the circumstances in which . . . statements of the petitioner [on which the government relies] were made or adopted." CMO § I.E.1(3). Evidence that such a statement was elicited under conditions of torture or coercion constitutes "circumstances" evidence that must be produced under § I.E.1. *See Anam v. Obama*, 2009 WL 1322637, at *1 (D.D.C. May 11, 2009) (ordering the government to disclose all information about the circumstances surrounding the taking of the statements made "including but not limited to any evidence of coercive techniques used during any interrogation or any inducements or promises made"); *Abdah v. Obama*, No. 04-1254 (D.D.C. Apr. 8, 2009) (Order) at 7 (holding that § I.E.1(3) "surely includes evidence of coercion or duress before or during the time that the statement was made"); *Ghanem v. Obama*, No. 05-1638 (D.D.C. Feb. 6, 2009) (Order) at 1 (ordering the government to produce "any interrogation logs, interrogation plans or programs, or documents describing interrogation times, dates, durations, physical conditions, techniques used to induce information . . . interrogation patterns, or identifying persons monitoring or present for the interrogations").

5

UNCLASSIFIED//FOR PUBLIC RELEASE

▮

The interrogation plan produced by the government, even in its heavily redacted form, demonstrates that these documents contain a host of relevant information regarding the interrogation of the petitioner, including the language in which such interrogations took place, their duration, the topics of information sought, the interrogator's basic strategy and previous approaches employed. *See* Petr's Mot., Ex. 1 at 1-7. The petitioner also notes, and the government does not refute, that the one interrogation plan form produced to date "specifies the interrogation techniques to be used . . . whether ▮ were offered . . . and whether the interrogation techniques required approval above the authority of the signer." Petr's Reply at 6. These materials plainly fall within the ambit of § I.E.1(3). Accordingly, the court concludes that for any statement made by the petitioner on which the government relies, § I.E.1(3) requires the government to produce any interrogation plans, plan forms, logs or similar records pertaining to that statement, including records relating to efforts to "soften up" the petitioner prior to interrogation. *See Abdah v. Obama*, No. 04-1254 (D.D.C. Apr. 8, 2009) (Order) at 7 (ordering the government to disclose "information about the time, duration, and physical conditions of the interrogation, any physically or psychologically coercive techniques used before or during the interrogation, any inducements or promises made before or during the interrogation, and copies of any interrogation logs").

The court is also persuaded that the "References" for authorized interrogation techniques requested by the petitioner may contain responsive "circumstances" evidence. The first "Reference" listed in the interrogation plan produced by the government refers to a "Memorandum from the Secretary of Defense to the Commander, US Southern Command," dated April 16, 2003. Petr's Mot., Ex. 1 at 7. The Armed Services Committee report on detainee abuse remarks that this memorandum authorized the use of 24 specific interrogation techniques,

▮

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



such as "dietary manipulation, environmental manipulation, and sleep adjustment." Petr's Reply, Ex. 1 ("Inquiry into the Treatment of Detainees in U.S. Custody, Report of the Committee on Armed Services, United States Senate") at xxii. Thus, it appears that the "References" listed on the interrogation plan defined the interrogation techniques authorized for use on the petitioner and to which he may have been subjected. *Id.* To the extent that this information pertains to interrogation techniques to which the petitioner was subjected, this information plainly falls within the scope of § I.E.1. *See Anam*, 2009 WL 1322637, at *1 (ordering the production of evidence of coercive techniques used on the petitioner). Accordingly, the government is required to produce all such reasonably available materials.[4]

The court, however, declines to order the production of *all* interrogation materials from 2002 to the present under § I.E.1. Section I.E.1 requires the production of "circumstances" evidence only for those statements made by the petitioner on which the government relies. CMO § I.E.1(3). Interrogation plans unrelated to such statements do not fall within the scope of this provision (though they may fall under other discovery provisions of the CMO). *See id.*

The court also declines the petitioner's request for the production of unredacted versions of interrogation plans. Although the petitioner notes that the government redacted a substantial portion of the one interrogation plan it did produce, he offers nothing to refute the government's contention that these redacted sections reflect sensitive national security information and do not contain responsive "circumstances" materials. *See* Petr's Mot. at 8 & Ex. 1; Petr's Reply at 5-6. Absent some specific basis for concluding that these redacted sections contain responsive "circumstances" information or otherwise contain evidence that the petitioner's detention is

---

[4] The court will not address the petitioner's request under § I.E.2 for "References" materials that are not "reasonably available," as this argument was raised for the first time in the petitioner's reply, depriving the government an opportunity to demonstrate undue burden. *See* Petr's Reply at 9.

7

unlawful, the court will not order the production of unredacted versions of interrogation reports. *See* CMO §§ I.E.1 & I.E.2.

The court, however, is troubled by the government's representation that "the redactions in question were made by the CIA and were based on a careful determination that counsel did not have a need to know the redacted information." Govt's Opp'n at 15-16. Nowhere in its opposition papers does the government state that these redactions, made by CIA officials employing a "need to know" standard, were reviewed by government attorneys for responsiveness under the CMO. *See generally id.* Rather, the government reasons that "there is no information in the redacted portion of the 'Interrogation Plan' as produced that falls within the requirements of Section I.E.1(3)" because "[i]f there was information . . . it would already have been provided." *Id.* at 15. Given the dearth of "circumstances" evidence produced by the government, this explanation provides little confidence to the court that the government is fulfilling its disclosure obligations under the CMO.

Accordingly, for all interrogation plans, plan forms, logs, records and similar documents that are produced in a redacted form, the government shall certify that a government attorney with an understanding of the law and the facts pertaining to this case has reviewed the unredacted documents and determined that no additional responsive materials are contained therein. *See Zuhair v. Bush*, 2009 WL 1164553, at *2 (D.D.C. May 1, 2009) (ordering the government to certify that an appropriate individual has reviewed redacted materials and determined that no additional information must be disclosed). If, after the production of these materials and the government's certification, the petitioner presents the court with a specific, non-conclusory basis for determining that these redacted sections contain responsive



8

UNCLASSIFIED//FOR PUBLIC RELEASE



information, the court will take appropriate action. At present, the court denies without prejudice the petitioner's request for unredacted versions of interrogation plans for the petitioner.

### C. Information Related to Abusive Interrogations of the Petitioner

The petitioner contends that since his capture, he has been subjected to highly coercive interrogations at various detention facilities in Afghanistan, Pakistan, Guantanamo Bay and perhaps elsewhere. Petr's Mot. at 13-14. The abusive treatment identified by the petitioner includes subjection to extended periods of complete darkness and isolation, deprivation of food and sleep, exposure to extreme temperatures and physical abuse. *Id.* The petitioner maintains that nearly the entire case against him is based on statements coerced from him through these abusive interrogations. *Id.* at 12. The petitioner requests the production of "all documents sufficient to identify all locations where [the petitioner] was detained by the United States" and "all documents related to interrogation(s) and treatment at each location." *Id.* These materials, the petitioner argues, constitute materially exculpatory evidence tending to undermine the government's case against him and must be produced under § I.D.1. *Id.* at 18-19. The petitioner also asserts that there is good cause for the production of these materials under § I.E.2 of the CMO. *Id.* at 19-20.

Although the government does not dispute that evidence of torture and coercion can fall under § I.D.1, it maintains that the petitioner's instant request should be denied. *See* Govt's Opp'n at 17-21. The government alleges that while detained at Bagram Air Force Base in June 2004, the petitioner recanted the inculpatory statements he had previously made while detained in Pakistan or Afghanistan. *Id.* at 18. According to the government, this disavowal was a "'taint removing event' . . . negating any claim that he remained 'scared' enough to 'make up' stories after that time." *Id.* The government argues that because it relies only on statements made after

9

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



this "taint removing event" at Bagram, evidence that the petitioner was tortured prior to his detention at Bagram does not materially undermine its evidence against the petitioner and need not be produced under § I.D.1. *Id.* at 18-20. The government further contends that the petitioner's allegations regarding abusive treatment at Guantanamo Bay do not taint any statements he made there, because the petitioner has not specified when these allegations occurred and thus failed to connect this abuse to any specific interviews. *Id.* at 20.

Section I.D.1 of the CMO requires the production of evidence tending to demonstrate the unreliability of statements made by petitioner on which the government relies, including evidence that such statements were the product of abuse, coercive treatment or torture. *See Halmandy v. Obama*, 2009 WL 1177042, at *2 (D.D.C. May 4, 2009) (ordering the production of evidence indicating that "a statement is unreliable because it is the product of abuse, torture, or mental or physical incapacity" under § I.D.1); *accord Aweda v. Bush*, 585 F. Supp. 2d 101, 104-05 (D.D.C. 2008) (holding that the government's duty to disclose exculpatory evidence includes evidence of abusive treatment or torture); *Al-Adahi v. Obama*, 597 F. Supp. 2d 38, 43 (D.D.C. 2006) (observing that the term "exculpatory evidence" has been defined broadly to include "any evidence of abusive treatment, torture, mental incapacity or physical incapacity which could affect the credibility and/or reliability of evidence being offered"). Thus, the government must produce any evidence that statements made by the petitioner on which the government relies were the product of torture or coercion.

In defining the scope of this disclosure obligation, both parties resort to the jurisprudence governing the admissibility of a confession given after a confession was obtained through unlawful coercive means. *See* Petr's Mot. at 16-17; Govt's Opp'n at 19-20; Petr's Reply at 13-14. The Supreme Court has held that a confession obtained after a coerced confession is



UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE



admissible if the subsequent confession was given voluntarily. *See Lyons v. Oklahoma*, 322 U.S. 596, 603 (1944). The Court in *Lyons* observed that

> [T]he fact that the earlier statement was obtained from the prisoner by coercion is to be considered in appraising the character of the later confession. The effect of earlier abuse may be so clear as to forbid any other inference than that it dominated the mind of the accused to such an extent that the later confession is involuntary. If the relation between the earlier and later confession is not so close that one must say the facts of one control the character of the other, the inference is one for the triers of fact and their conclusion, in such an uncertain situation, that the confession should be admitted as voluntary, cannot be a denial of due process.

*Id.*

In assessing the voluntariness of the subsequent confession, "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Oregon v. Elstad*, 470 U.S. 298, 310 (1985). The Supreme Court has held that even in situations in which days pass between confessions, during which the suspect disavows his prior statement, the prior coerced confession can still taint the subsequent confession. *See Clewis v. Texas*, 386 U.S. 707, 710-12 (1967). The defendant in *Clewis* was kept in custody for 38 hours, during which time he had very little sleep, no contact with an attorney and was visited briefly once or twice, at which point he confessed. *Id.* at 709. Over the following four days, the defendant was subjected to frequent interrogations and polygraph tests, during which he maintained his innocence until again confessing. *Id.* at 709-10. Although the defendant recanted the second confession, the defendant again confessed during an interrogation held five days later. *Id.* at 710. The Supreme Court determined that the third confession could not be separated from the earlier, tainted confessions because "[t]here is here no break in the stream of events from the time Sunday morning when [the defendant] was taken to the police station to the time Tuesday morning some





nine days later that he signed the statement in issue, sufficient to insulate the statement from the effect of all that went before." *Id.*

Here, the petitioner asserts that after his capture, he was taken to the "Dark Prison,"[5] where he was held for approximately seven months kept in the pitch dark, deprived of food and sleep, chained to a wall and threatened with hanging. Petr's Mot. at 13. It was during this period that the petitioner allegedly "confessed" to having had a relationship with Osama Bin Laden. *Id.* The petitioner asserts that he was then taken to an underground prison, where he was held for nine months, during which time he was kept cold and hungry and was subjected to frequent, threatening interrogations. *Id.* at 14. The petitioner was then transferred first to Bagram and then to Guantanamo Bay, all the while subjected to harsh treatment and constant interrogation. *Id.* These allegations detail an unbroken stream of coercion, abuse and torture stretching from the petitioner's capture in Pakistan to his more recent interrogations in Guantanamo Bay.

The mere fact that the petitioner allegedly recanted his prior inculpatory statements while at Bagram is insufficient to insulate subsequent statements from the taint of prior coerced statements, given the unbroken stream of interrogations to which the petitioner was subjected before and after Bagram as well as the highly coercive nature of the conduct alleged. Indeed, the Supreme Court has observed that the causal connection between two confessions is heightened if the prior confession was obtained through physical violence or other deliberate means of coercion. *See Elstad*, 470 U.S. at 312 (observing that "[t]here is a vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure . . . freely given in response to an unwarned but noncoercive question").

---

[5] Other detainees have testified about being detained and tortured at a facility referred to as the "Dark Prison." *See Ahmed v. Obama*, 2009 WL 1307954, at *7 (D.D.C. May 11, 2009).

12

UNCLASSIFIED//FOR PUBLIC RELEASE



Moreover, even if the petitioner's disavowal at Bagram weakens the inference to be drawn from evidence of prior coercion and torture, the government has hardly shown that the disavowal was of such a nature as to render such evidence immaterial. *See* CMO § I.D.1. Indeed, the *Lyons* Court observed that an earlier coerced statement "is to be considered in appraising the character of the later confession" and that even when the relation between the two confessions "is not so close," the effect of the prior statement "is one for the triers of fact." *Lyons*, 322 U.S. at 603. Accordingly, the court concludes that evidence that coercion, abuse or torture were used to obtain inculpatory statements from the defendant at any point during his detention must be produced under § I.D.1 of the CMO.[6]

### D. Access to Khalid Shaykh Mohammad for Submission of Questioning

The petitioner requests the opportunity to question detainee Khalid Shaykh Mohammad ("KSM") because the government relies in part on allegations that the petitioner worked for KSM to justify his detention. Petr's Mot. at 20. The petitioner reasons that "[i]f Respondents' contentions regarding Petitioner were correct, then Respondents must have also questioned [KSM] about [the petitioner]" and yet no statements by KSM have been produced. *Id.* The petitioner argues that § I.E.2 entitles him to question KSM, either directly or through the submission of written questions, "concerning the role of Petitioner" because without such access, he will be unable to challenge the government's allegations. *Id.* at 20-21.

The government vehemently opposes the petitioner's request. Govt's Opp'n at 21-24. The government contends that the petitioner's request is not narrowly tailored because the petitioner has failed to list any of the information he would elicit from KSM beyond the broad request to question him concerning the petitioner's "role." *Id.* at 21-22. The government also

---

[6] Because the court concludes that these materials must be produced under § I.D.1, the court does not address the petitioner's arguments that "good cause" exists for the production of these materials under § I.E.2.



13

UNCLASSIFIED//FOR PUBLIC RELEASE



argues that the petitioner's request would impose an impermissible burden on the government. *Id.* at 22. The government notes that KSM had previously been detained as part of a special CIA program to detain and interrogate key terrorist leaders to obtain information to prevent future terrorist attacks. *Id.* This program, the government contends, is vital to national security. *Id.* The government argues that "[b]ecause of KSM's involvement in the CIA program, it is likely that he possesses, and will be able to transmit through any discovery responses, information that is classified at higher security levels" and that "it is impossible to know what he may reveal in his responses to interrogatories." *Id.* at 23. Thus, the government contends that any access to KSM, even through written interrogatories, implicates vital national security concerns. *Id.*

The petitioner has clearly articulated why the discovery sought could produce exculpatory evidence. Many of the government's allegations against the petitioner center on work allegedly performed for KSM. *See* Government's Narrative for Petr Mohammed Ahmad Ghulam Rabbani (Oct. 21, 2008) ¶¶ 22-35. The government alleges that the petitioner's work for KSM involved ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 23. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Yet the government itself acknowledges that the petitioner has also stated that his relationship to KSM was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and that any inculpatory statements he made were elicited through torture or other coercion. *See* Govt's Narrative for Petr Mohammed Ahmad Ghulam Rabbani (Oct. 24, 2008) ("Am. Narrative") ¶ 30 n.1. Accordingly, testimony from KSM regarding the functions that the petitioner fulfilled while under his employ could prove to be materially exculpatory. ▮▮▮▮▮▮▮▮

UNCLASSIFIED//FOR PUBLIC RELEASE



Yet in failing to specify the precise topics on which he intends to question KSM or to submit a list of proposed interrogatories, the petitioner has failed to narrowly tailor his request. Given the national security interests identified by the government, the court will not give the petitioner rein to question KSM tethered only by the nebulous limitation that the questions pertain to the "role" of the petitioner.

Balancing the petitioner's interest in obtaining potentially exculpatory information against the national security interests implicated by the petitioner's request, the court concludes that the petitioner may submit a list of narrowly tailored interrogatories to be answered by KSM. These interrogatories shall focus exclusively on the relationship between KSM and the petitioner prior to their apprehension and the petitioner's role, if any, in facilitating operations on behalf of Al-Qaida. The interrogatories shall not delve into matters regarding KSM's detention or interrogation. The government shall have the opportunity to redact KSM's responses to the extent necessary to prevent the release of information implicating national security concerns.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the petitioners' motion to compel. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of July, 2009.

RICARDO M. URBINA
United States District Judge



15