IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMAD AHMAD GHULAM RABBANI,<br><br>*Petitioner/Plaintiff,*<br><br>v.<br><br>BARACK H. OBAMA, et al.,<br><br>*Respondents/Defendants.* | Civ. No. 05-1607 (RCL) |

**PETITIONER'S NOTIFICATION OF CLAIMS THAT REMAIN TO BE DECIDED**

**INTRODUCTION**

This Court has ordered Petitioner "to notify the Court of what, if any, claims remain to be decided in this case that were not already addressed in Judge Kessler's well-reasoned opinion" in *Dhiab v. Obama*, No. 05-cv-1457 (D.D.C. Nov. 7, 2014). Doc. #339. As this brief explains, the Court must decide whether this case implicates the Fifth Amendment due process right to refuse medical treatment. If it does, then the Court must further determine whether there are "ready alternatives" to the challenged force-feeding practices, such that they are unlawful because they do not "serve legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). Further, regardless of whether the case implicates the constitutional right to refuse medical treatment, the Court must determine the legality of the practice of "forcible cell extraction" at Guantánamo Bay. Finally, if (as Judge Kessler has expressed hope) Mr. Dhiab is soon released, Judge Kessler's opinion will be subject to vacatur, so that *all* of the issues presented in this case must be decided in the first instance.

# DISCUSSION

**I. THE COURT MUST DECIDE WHETHER THIS CASE IMPLICATES THE FIFTH AMENDMENT DUE PROCESS RIGHT TO REFUSE MEDICAL TREATMENT AND THUS INVOKES THE *TURNER* STANDARD OF PROOF.**

Here, as in *Dhiab*, Petitioner alleges unlawful violations of the Fifth Amendment due process right to refuse medical treatment enunciated in *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278-79 (1990), the infringement of which would invoke the *Turner* standard of proof. *Hatim v. Obama*, 760 F.3d 54, 58 (D.C. Cir. 2014) ("We review constitutional challenges to prison policies under the test announced by the Supreme Court in *Turner* . . . ."); *see* Doc. #308-1 at 21; *Dhiab,* Doc. #203-1 at 27. Respondents contend here, as they did in *Dhiab*, that the applicable standard of proof is not the *Turner* standard but rather the "deliberate indifference" standard set forth in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) for nonconstitutional challenges to prison conditions. *See* Doc. #327-2 at 124; *Dhiab,* Doc. #226-2 at 24-25.

Judge Kessler's opinion applied the "deliberate indifference" standard instead of the *Turner* standard, stating that Mr. Dhiab "has failed to identify any constitutional right or rights offended by the challenged practices." *Dhiab,* Doc. #366 at 8. Thus, implicit in Judge Kessler's opinion is an assumption that the Guantánamo Bay detainees do not possess the constitutional right to refuse medical treatment. The opinion did not, however, actually *decide* whether the detainees possess that constitutional right. On the now-pending appeal from Judge Kessler's order denying a preliminary injunction, *see Dhiab,* Doc. #368 (notice of appeal filed Nov. 10, 2014), Mr. Dhiab will contend that Judge Kessler should have addressed that issue, should have decided that Mr. Dhiab *does* possess the constitutional right to refuse medical treatment, and thus should have applied the *Turner* standard instead of the "deliberate indifference" standard.

The same issue arises in the present case. We respectfully submit that, as a threshold matter, this Court should decide whether Petitioner possesses the constitutional right to refuse medical treatment. If he does, then the applicable standard of proof is the *Turner* standard, not the "deliberate indifference" standard.

This issue implicates the Constitution's extraterritorial reach to Guantánamo Bay. In *Boumediene v. Bush*, 553 U.S. 723 (2008), which held that the Suspension Clause "has full effect at Guantánamo Bay," the Supreme Court rejected "a formalistic, sovereignty-based test" for determining the Constitution's extraterritorial reach, *id.* at 763, and instead enunciated a "functional approach to questions of extraterritoriality." *Id.* at 764. Under this functional approach, "whether a constitutional provision has extraterritorial effect depends upon the 'particular circumstances, the practical necessities, and the possible alternatives which Congress had before it' and, in particular, whether judicial enforcement of the provision would be 'impracticable and anomalous.' " *Id.* at 759 (quoting *Reid v. Covert*, 354 U.S. 1, 74-75 (1957) (Harlan, J., concurring)). *Boumediene* concluded that, under the functional approach, the Suspension Clause's reach extends to Guantánamo Bay because, among other things, there is "no credible argument that the military mission at Guantánamo would be compromised if habeas corpus courts had jurisdiction to hear the detainees' claims," *id.* at 769, and the detainees "are held in a territory that, while technically not part of the United States, is under the complete and total control of our government." *Id.* at 771.

We submit that application of the functional approach in the present case mandates a finding of extraterritorial reach to the same extent that prisoners within the sovereign borders of the United States possess the constitutional right to refuse medical treatment.

Within the sovereign borders of the United States, hunger-striking prisoners possess a *qualified* constitutional right to refuse medical treatment: they may refuse enteral feeding unless they are at *imminent risk of death or great bodily injury*, in which case they may be force-fed. *See, e.g., Aamer v. Obama*, 742 F.2d 1023, 1042 (D.C. Cir. 2014) ("absent exceptional circumstances prison officials may force-feed a starving inmate actually facing the risk of death"); 28 C.F.R. § 549.65(a) (federal Bureau of Prisons regulation authorizing force-feeding "when a physician determines that the inmate's life or health will be threatened if treatment is not initiated immediately"). Petitioner contends he is not now and has never been at imminent risk of death or great bodily injury as a result of his hunger strike. If that is true, then he has the qualified constitutional right to refuse force-feeding—*if* that right extends to Guantánamo Bay.

The extraterritorial reach of this qualified constitutional right must be determined under the functional approach enunciated in *Boumediene*. Here, as in *Boumediene*, the functional approach leads to a finding of extraterritorial reach. The purpose of force-feeding at Guantánamo Bay is precisely the same as in any prison within the sovereign borders of the United States—to preserve the prisoner's life and to maintain security and discipline in the detention facility. *Aamar,* 742 F.3d at 1040. Those interests are not impaired when a hunger-striking prisoner is *not yet at imminent risk* of death or serious bodily injury or there are *ready alternatives* to the methods of force-feeding at issue. And as the D.C. Circuit observed in *Aamer*, "[i]t is conceivable" that a detainee could show "that there are 'ready alternatives' to force-feeding that the government might employ to achieve the same legitimate interests." *Id.* at 1041.

Given that force-feeding of hunger-striking prisoners at Guantánamo Bay and at prisons within the sovereign borders of the United States implicate "the same legitimate interests,"

*Aamer*, 742 F.3d at 1041, there can be "no credible argument that the military mission at Guantánamo could be compromised," *Boumediene*, 553 U.S. at 769, if this qualified constitutional right to refuse medical treatment extends extraterritorially to Guantánamo Bay. If that right does not threaten the interests in preserving life and maintaining security at prisons within the sovereign borders of the United States, it cannot possibly do so at Guantánamo Bay—"a territory that, while technically not part of the United States, is under the complete and total control of our government." *Id.* at 771.

In Respondents' reply to this brief, they will likely rely on *Kiyemba v. Obama*, 555 F.3d 1022 (2009) (*Kiyemba I*), *vacated and remanded*, 559 U.S. 131 (2010), *reinstated as modified*, 561 F.3d 509 (D.C. Cir. 2010). In *Kiyemba I*, the D.C. Circuit reversed a district court order requiring that ethnic Uighurs detained at Guantánamo Bay be brought to and released in the United States. Noting that the district judge's invocation of " 'the fundamental right of liberty' " suggested that the district judge "may have had the Fifth Amendment's due process clause in mind," the D.C. Circuit commented that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States." *Id.* at 1026. But whichever Fifth Amendment due process liberty interest the D.C. Circuit had in mind in *Kiyemba I*—perhaps the right to international travel, *see Haig v. Agee*, 453 U.S. 280, 307 (1991)—it was not the Fifth Amendment due process liberty interest in *refusing medical treatment*. *See Cruzan,* 497 U.S. at 279 (describing the right to refuse medical treatment as "a " 'liberty interest' under the Due Process Clause"). Plainly, *Kiyemba I* did not address the extraterritorial reach of the constitutional right to refuse medical treatment. Thus, *Kiyemba I* cannot be authority for the proposition that Petitioner does not possess that right.

If *Kiyemba I* were read as pronouncing *categorically* that *none* of the Fifth Amendment's substantive due process rights extend extraterritorially to Guantánamo Bay—regardless of the protected liberty interest—it would contravene the Supreme Court's rejection of "a formalistic, sovereignty-based test" of extraterritoriality. *Boumediene*, 553 U.S. at 763. Indeed, *Boumediene* itself extended the constitutional right of procedural due process to Guantánamo Bay in holding that habeas review is available because Congress failed to provide adequate substitute procedures. *See id.* at 767, 772. As the Court explained: "The idea that the necessary scope of habeas review in part depends upon the rigor of any earlier proceedings accords with our test for procedural adequacy in the due process context." *Id.* at 781; *see also id.* at 779, 783 ("the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate" unlawful detention, and "[t]he habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain.").

Evidently, the D.C. Circuit in *Aamer* did not think *Kiyemba I* compels a determination that the constitutional right to refuse medical treatment does not extend extraterritorially to Guantánamo Bay. *Aamer* expressly *deferred* the issue, stating "we shall, for purposes of this case, assume without deciding that the constitutional right to be free from unwanted medical treatment extends to nonresident aliens detained at Guantánamo and that we should use the *Turner* framework to evaluate petitioner's claim." *Aamer*, 742 F.3d at 1039. Judge Kessler has done the opposite—she has assumed without deciding that the constitutional right to refuse medical treatment *does not* extend to Guantánamo Bay.

The time is ripe for a reasoned decision on this issue, by this Court. If the Court decides that Petitioner *does* possess a qualified constitutional right to refuse medical treatment, then this

Court must decide what Judge Kessler did not decide—whether the challenged force-feeding practices are unlawful under the *Turner* standard of proof.

## II. THE COURT MUST DECIDE THE LEGALITY OF PETITIONER'S FORCIBLE CELL EXTRACTIONS.

Among the force-feeding practices challenged here, as in *Dhiab*, are Petitioner's "forcible cell extractions" (FCEs)—violent interventions by teams of heavily-armored guards who rush a hunger-striking detainee's cell, truss him painfully under full restraint, and then carry his immobilized body away for force-feeding. Shortly before the hearing on Mr. Dhiab's application for a preliminary injunction, Respondents ceased subjecting him to FCEs, and thus Judge Kessler did not decide their legality. *See Dhiab,* Doc. #366 at 5, 20. Consequently, the issue remains to be decided in the present case, regardless of the applicable standard of proof.

Routine and indiscriminate use of FCEs is authorized by Guantánamo Bay Standard Operating Procedure (SOP) No. 38, section 38-6(i)(3)(b), which gives the JTF Commander unfettered discretion to subject hunger-striking detainees to FCEs without any consideration of alternative practices that are less violent and less painful. *See Dhiab,* Doc. #350, Resp. Ex. 19A at 38-7. Under the *Turner* standard, section 38-6(i)(3)(b) of SOP No. 38 is unlawful for failure to mandate the consideration of "ready alternatives" to FCEs. *See Coleman v. Brown*, No. Civ. S-90-520 LKK/DA (PC), 2014 WL 1400964 at *13 (E.D. Cal. Apr. 11, 2014) (ordering revision of California state prison policies on FCEs to include "alternatives to use of force on seriously mentally ill inmates where there is no imminent threat to life and force is contraindicated by the inmate-patient's mental health"); *cf.* 28 C.F.R. § 552.20 (Bureau of Prisons regulation authorizing use of force "only as a last alternative after all other reasonable efforts to resolve a situation have failed"); 28 C.F.R. § 552.22(a) & (c) (Bureau of Prisons regulation stating that

7

"[s]taff ordinarily shall first attempt to gain the inmate's voluntary cooperation before using force" and "shall use only that amount of force necessary to gain control of the inmate").

Even under the "deliberate indifference" standard, section 38-6(i)(3)(b) of SOP No. 38 is unlawful. In *Dhiab*, there was evidence of an admission by a former Guantánamo Bay Joint Defense Group Commander that a small number of hunger strikers had been force-fed under experimental relaxed conditions—without resort to FCEs or a restraint chair—in an unsuccessful effort to "incentivize" them to stop hunger-striking.[1] *See Dhiab,* Doc. #350, Resp. Exh. 8A at 2. Judge Kessler's opinion did not address that evidence. It remains for this Court to do so here. We submit that this offer to relieve detainees of the pain and suffering caused by FCEs and use of the restraint chair—the offer being the "carrot" counterpart to the "stick" of those practices—amply demonstrates that Respondents are not just "deliberately indifferent" to such pain and suffering but have been purposefully using it as a cudgel to discourage hunger-striking.

## III. IF DHIAB IS RELEASED, *ALL* OF THE ISSUES PRESENTED HERE WILL REMAIN TO BE DECIDED IN THE FIRST INSTANCE.

Finally, we note that at the close of her opinion Judge Kessler commented that Mr. Dhiab "has been cleared for release since 2009" and "one can only hope that release will take place shortly." *Dhiab,* Doc. #366 at 20. If Mr. Dhiab's release *does* happen soon, his pending appeal will become moot and Judge Kessler's opinion will be subject to vacatur. *See Soliman v. United States*, 296 F.3d 1237, 1243 (11th Cir. 2002). Such a turn of events would revive *all* of the issues before Judge Kessler that are also presented here, for a decision by this Court in the first instance. Thus, if Dhiab has been released by the time this Court issues its decision on

---

[1] On November 7, 2014, the current Joint Defense Group Commander announced that this experiment of force-feeding under relaxed conditions had ceased. *See* Carol Rosenberg, *Judge upholds Guantánamo's treatment of hunger-striker waiting to go*, Miami Herald (Nov. 8, 2014).

8

Petitioner's application for preliminary injunction, the Court should fully adjudicate all of the issues presented by the application, not just the issues Judge Kessler left unaddressed.

## CONCLUSION

For the foregoing reasons, this Court should adjudicate the following: (1) the issue whether Petitioner possesses a qualified Fifth Amendment due process right to refuse medical treatment (and, if so, the legality of all challenged practices under the *Turner* standard of proof); (2) the legality of the routine and indiscriminate use of FCEs at Guantánamo Bay (whether under the *Turner* standard or the "deliberate indifference" standard); and (3) if Mr. Dhiab is released by the time this Court issues its decision on Petitioner's application for a preliminary injunction, all of the issues presented on the application.

Respectfully submitted,

   /s/ Jon B. Eisenberg
**JON B. EISENBERG** (CA State Bar #88278)
1970 Broadway, Suite 1200
Oakland, CA 94612
(510) 452-2581
*jeisenberg@horvitzlevy.com*

   /s/ Cori Crider
**REPRIEVE**
Clive Stafford Smith (LA Bar #14444)
Cori Crider (NY Bar #4525721)
Alka Pradhan (D.C. Bar #1004387)
P.O. Box 72054
London EC3P 3BZ
United Kingdom
011 44 207 553 8140
*clive.stafford.smith@reprieve.org.uk*
*cori@reprieve.org.uk*
alka.pradhan@reprieve.org

   /s/ Lisa R. Jaskol
**PUBLIC COUNSEL**
Lisa R. Jaskol (CA State Bar #138769)
610 S. Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
*ljaskol@publiccounsel.org*

   /s/ Eric L. Lewis
**LEWIS BAACH PLLC**
Eric L. Lewis (D.C. Bar #394643)
Elizabeth L. Marvin (D.C. Bar #496571)
1899 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20006
(202) 833-8900
*eric.lewis@lewisbaach.com*
*elizabeth.marvin@lewisbaach.com*

*Counsel for Petitioner/Plaintiff*

Dated: November 19, 2014