IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMAD AHMAD GHULAM RABBANI,<br><br>*Petitioner/Plaintiff,*<br><br>v.<br><br>BARACK H. OBAMA, et al.,<br><br>*Respondents/Defendants.* | Civ. No. 05-1607 (RCL) |

**PETITIONER'S STATUS REPORT REGARDING
CLAIMS THAT REMAIN TO BE DECIDED**

Petitioner Mohammad Ahmad Ghulam Rabbani hereby provides a status report pertaining to Petitioner's Notification Of Claims That Remain To Be Decided, filed on November 19, 2014, in which Petitioner advised the Court that if Guantánamo Bay detainee Abu Wa'el (Jihad) Dhiab were released, his pending appeal in *Dhiab v. Obama*, No. 05-CV-1457 (GK) would become moot.  *See* Doc. #341 at 8-9.

On December 8, 2014, Respondents provided notice that "the United States has relinquished custody of Petitioner Abu Wa'el Jihad Dhiab (ISN 722) and transferred him to the control of the Government of Uruguay."  *Dhiab v. Obama*, Doc. #381.  As previously explained in Petitioner's Notification Of Claims That Remain To Be Decided, the transfer of Mr. Dhiab to Uruguay moots his pending appeal and subjects Judge Kessler's order and opinion of November 7, 2014 to vacatur, requiring this Court to adjudicate all of the issues presented in this proceeding.  *See* Doc. #341 at 8-9.  We therefore respectfully request the Court to proceed with a full adjudication of all issues presented on Petitioner's application for preliminary injunction.

We also advise the Court of the following additional issue that has newly-arisen:

In recent correspondence, and in a telephone call with one of his attorneys on December 10, 2014, Petitioner has reported to his counsel a serious downturn in the state of his health, including infection and vomiting of blood. Previously, in a declaration submitted to this Court on May 22, 2014, Petitioner reported (through a member of his legal team) that a series of incorrectly-performed force-feedings in April of 2014 had caused him to suffer a painful chest infection and inability to breathe. *See* Doc. #326 at 1.

In the course of Petitioner's force-feedings, his feeding tubes have been lubricated with olive oil. This was standard practice at Guantánamo Bay until a few weeks after the submission of a declaration by Dr. Steven H. Miles in the *Dhiab* litigation on June 20, 2014. *See Dhiab v. Obama*, Doc. #265-1 (attached hereto as Exhibit A).

The Miles declaration states that "the decision to use olive oil" to lubricate feeding tubes "is a remarkable instance of medical care in reckless disregard of standard medical practice," which can "cause a condition called lipoid pneumonia" resulting in "respiratory distress which is chemical and thus not treatable with antibiotics" and "markings on a lung radiograph (x-ray) that can either mimic or conceal cancer, tuberculosis or pneumonia." *Dhiab v. Obama*, Doc. #265-1, (attached hereto as Exhibit A) ¶ 11. Dr. Miles further addressed this point at the hearing on Mr. Dhiab's application for preliminary injunction. He explained that "this is a peculiar kind of pneumonia that's essentially not an infectious pneumonia but an inflammatory pneumonia. It can be very difficult to see on x-rays and it can also be chronic. That means it can progress as a fibrosis in the lungs after the stimulation has been removed . . . ." *Dhiab*, Tr. 10/7/14 at 45 (attached hereto as Exhibit B). According to Dr. Miles, "it's possible in some patients to have a chronic inflammatory response that produces fibrosis and shortness of breath long after the initial

exposure to the olive oil," and thus "these prisoners need to have access to ongoing evaluations that could detect that possibility because of the long lasting harm and acquisition of . . . an inflammatory disease from the olive oil." *Id.* at 47.

There is at least one recorded instance of a force-fed hunger-striking Guantánamo Bay detainee contracting pneumonia—Adnan Latif, who overdosed on medication in 2012. According to a report on Latif's autopsy, "[a]n examination of the lungs showed acute bilateral pneumonia" and "it is uncertain to what extent the acute pneumonia contributed to [his] death." *See* Jason Leopold, *Widespread Breakdown of Safeguards at Gitmo*, Al-Jazeera (July 3, 2013), *available at* http://www.aljazeera.com/humanrights/2013/07/20137324426228887.html, at 38.

In light of (1) the fact that previous lubrication of Petitioner's feeding tubes with olive oil has put him at risk of chronic lipoid pneumonia which could conceal other serious diseases, (2) Dr. Miles's recommendation of ongoing evaluations for inflammatory lung disease, and (3) the recent serious downturn in the state of Petitioner's health, Petitioner's counsel recently requested that Petitioner be tested expeditiously for lipoid pneumonia. This request was made in the course of a series of email exchanges between Petitioner's counsel Jon B. Eisenberg and Respondents' counsel Andrew Warden during the period December 9, 2014 to December 15, 2014 (attached hereto as Exhibit C).

On December 9, 2014, Mr. Eisenberg initiated the request. On December 12, 2014, Mr. Warden rejected the request, citing two reasons: (1) a standard chest x-ray taken of Petitioner in August 2014 for routine tuberculosis screening had shown no signs of pneumonia or other lung infection, and (2) Petitioner had not reported any respiratory complaints for the past several months.

Later that same day (December 12, 2014), Mr. Eisenberg emailed a medical journal article to Mr. Warden, quoting from the article in the transmitting email. The article states that (1) more than half of persons with lipoid pneumonia are asymptomatic, (2) chest x-rays have a relatively low rate of diagnostic accuracy for lipoid pneumonia, and (3) there are much more accurate tests for diagnosing lipoid pneumonia (e.g., high resolution computed tomography or bronchoscopy with bronchoaveolar lavage). *See* Edson Marchori et al., *Exogenous lipoid pneumonia. Clinical and radiological manifestations*, 205 Respiratory Medicine 659 (2011) (attached hereto as Exhibit D). In the transmitting email, Mr. Eisenberg also directed Mr. Warden's attention to Dr. Miles's testimony that lipoid pneumonia "can be very difficult to see on x-rays" and "it's possible in some patients to have a chronic inflammatory response that produces fibrosis and shortness of breath long after the initial exposure to the olive oil." Exhibit C (quoting Exhibit B at 45).

Respondents, however, have chosen to disregard the expert testimony and medical literature referenced in Mr. Eisenberg's email. On December 15, 2014, Mr. Warden concluded the email exchange by advising Mr. Eisenberg that the Guantánamo Bay Joint Medical Group is refusing to test Petitioner for lipoid pneumonia *because he is asymptomatic*—despite the fact that more than half of persons with lipoid pneumonia are asymptomatic.

We submit that Respondents' refusal to test Petitioner for lipoid pneumonia presents an additional issue for this Court's decision:  whether that refusal meets the "deliberate indifference" standard of proof set forth in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Respectfully submitted,

   /s/ Jon B. Eisenberg
**JON B. EISENBERG** (CA State Bar #88278)
1970 Broadway, Suite 1200
Oakland, CA 94612
(510) 452-2581
*jeisenberg@horvitzlevy.com*


   /s/ Cori Crider
**REPRIEVE**
Clive Stafford Smith (LA Bar #14444)
Cori Crider (NY Bar #4525721)
Alka Pradhan (D.C. Bar #1004387)
P.O. Box 72054
London EC3P 3BZ
United Kingdom
011 44 207 553 8140
*clive.stafford.smith@reprieve.org.uk*
*cori@reprieve.org.uk*
alka.pradhan@reprieve.org


   /s/ Lisa R. Jaskol
**PUBLIC COUNSEL**
Lisa R. Jaskol (CA State Bar #138769)
610 S. Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
*ljaskol@publiccounsel.org*


   /s/ Eric L. Lewis
**LEWIS BAACH PLLC**
Eric L. Lewis (D.C. Bar #394643)
Elizabeth L. Marvin (D.C. Bar #496571)
1899 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20006
(202) 833-8900
*eric.lewis@lewisbaach.com*
*elizabeth.marvin@lewisbaach.com*

*Counsel for Petitioner/Plaintiff*

Dated: December 16, 2014